Jean GATLING, Appellant,

v.

Nancy PERNA, Executrix of the Estate of Ferald O. Mauk, M.D., Appellee.

No. 05–89–00364–CV.

Court of Appeals of Texas, Dallas.

Feb. 12, 1990.

Rehearing Denied March 22, 1990.

C.C. "Sonny" Phillips, Humble, Cary S. Stenrick, Alan J. Winters, Houston, for appellant.

R. Brent Cooper, William F. Allred, Cowles & Thompson, Dallas, for appellee.

Before HOWELL, ROWE and KINKEADE, JJ.

## OPINION ON MOTION FOR REHEARING

ROWE, Justice.

Appellee's motion for rehearing is denied. Our opinion of December 20, 1989, is withdrawn, and this opinion is issued in lieu thereof.

Jean Gatling appeals from a summary judgment rendered against her in a medical malpractice suit that she brought against the estate of her psychiatrist, Dr. Ferald O. Mauk, deceased. The doctor's estate, represented by its executrix, Nancy Perna, contended that Gatling's suit was barred as a matter of law by limitations, and the trial court agreed. We disagree, reverse the summary judgment, and remand the cause to the trial court for further proceedings.

Gatling's petition sets forth the following details of her medical history while she was under the care of Dr. Mauk: Treatment for Gatling's psychiatric condition began in September 1980 and continued until December 1985. During all that time, Dr. Mauk prescribed various phenothiazine-type drugs including Stelazine, Prolixin, Haldol, and Moban. These drugs carry the risk of causing tardive dyskinesia. Gatling developed tardive dyskinesia sometime between 1980 and 1985 while taking these drugs. Dr. Mauk never informed Gatling of the possible side effects of these drugs and was guilty of negligence in his failure to obtain her informed consent to their use. Also, Dr. Mauk negligently failed to timely refer Gatling for neurological care after she developed tardive dyskinesia and negligently continued to prescribe the drugs despite the known harm they had already caused. Further, with intent to deceive, Dr. Mauk fraudulently concealed his malpractice from Gatling and lulled her into believing her neurological disorder was not associated with the drugs. Gatling's pleading was filed on August 31, 1987.

The doctor's estate answered by general denial and sought specifically to limit its liability and damages in accordance with the Medical Liability and Insurance Improvement Act. Tex.Rev.Civ.Stat.Ann. art. 4590i (Vernon Supp.1989). This act specially defines the theory of recovery sought by Gatling with respect to Dr. Mauk's failure to disclose the risks in question. *Id.* at §§ 6.01–6.07. Section 10.01 of the act also provides this special statute of limitations:

Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed....

Tex.Rev.Civ.Stat.Ann. art. 4590i, § 10.01.

The doctor's estate subsequently filed a motion for summary judgment which relied solely upon a limitations defense incident to section 10.01. This motion was supported by deposition testimony of Gatling and one of her doctors, Dr. Carl A. Lewis, as well as by affidavit testimony covering some of her medical records. The medical records established that Dr. Mauk had prescribed Stelazine from December 1980 to June 1982, Prolixin from June 1982 to October 1984; Haldol briefly during October 1984, and Moban from October 1984 to November 1985. The deposition testimony revealed that all these drugs are phenothiazines which can cause tardive dyskinesia. Gatling's deposition testimony also dis-

closed that she was given a neurological examination during October 1984 for a neuromuscular problem from which she was suffering. The examining neurologist reported to her thereafter that in his opinion she had tardive dyskinesia and that it was associated with the medications prescribed by Dr. Mauk. The doctor's estate maintains that this summary judgment evidence establishes as a matter of law that Gatling's malpractice claim is time-barred because she had actually discovered her injury, or reasonably should have discovered it, at least by October 1984. This date is more than two years before Gatling filed suit.

■ Gatling filed a response which attacked the summary judgment motion on grounds: (1) that while she had pleaded three alternative causes of action, the movant had failed to negate all three; (2) that Dr. Mauk had fraudulently disabled Gatling from pursuing legal action against him by minimizing his involvement in her neuromuscular problem; and (3) that Dr. Mauk's action in prescribing a phenothiazine after harmful effects therefrom had become apparent effectively extended limitations until that treatment was ended in December 1985. Gatling added to the summary judgment evidence other excerpts from her deposition, these excerpts detailing that she had not become alarmed about Dr. Mauk's treatment until late in 1985 when she inquired about her neuromuscular condition and Dr. Mauk told her that he would not fully answer her questions. Previously in answer to such questions he had told her the condition was nothing to worry about. Gatling also adopted the movant's evidence establishing the chronological sequence in which the four phenothiazines were prescribed, in particular the fact that Dr. Mauk had not prescribed Moban until after Gatling's neurological examination in October 1984.

■ To justify the trial court's summary judgment, the doctor's estate relied upon the holding in *Kimball v. Brothers*, 741 S.W.2d 370 (Tex.1987). *Kimball* is said to be controlling of the case before us because the summary judgment evidence

established beyond dispute that any act of malpractice for which Dr. Mauk might be responsible resulted in noticeable injury to Gatling on or before October 1984. *Kimball* holds that when the precise date of the specific tort is ascertainable from the facts of the case, section 10.01 of article 4590i requires that the limitation period run from the date of the tort. This analysis, of course, overlooks the continuing nature of the tort about which Gatling complains, and we seriously question whether continuing torts can be so limited. We need not decide this issue, however, because the holding in *Kimball* is clearly restricted by the holding in *Neagle v. Nelson*, 685 S.W.2d 11 (Tex.1985). *Neagle* holds that a claim for medical malpractice cannot be time-barred before the patient has a reasonable opportunity to discover the wrong and bring suit. Gatling denied that she had discovered Dr. Mauk's malpractice by October 1984. To the contrary, she contends that he effectively concealed his malpractice throughout his entire treatment of her which lasted until December 1985. Thus, under *Neagle*, unless the summary judgment evidence conclusively impugns her contention raising lack of discovery of malpractice, Gatling's suit cannot be time-barred under *Kimball*. The bar of limitations is an affirmative defense, and the burden of conclusively establishing it rests upon the doctor's estate. *Gibson v. John D. Campbell & Co.*, 624 S.W.2d 728, 731 (Tex.App.—Fort Worth 1981, no writ).

■ The function of a summary judgment is not to deprive a litigant of the right to a full hearing on the merits of any real issues of fact, but to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Wilcox v. St. Mary's Univ.*, 531 S.W.2d 589, 592–93 (Tex.1975); Tex.R.Civ.P. 166a. In our review of the summary judgment evidence, we must follow these standards enunciated in *Nixon v. Mr. Property*

*Management Co.*, 690 S.W.2d 546 (Tex. 1985):

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant must be taken as true.

(3) Every reasonable inference must be indulged in favor of the nonmovant and doubts resolved in its favor.

690 S.W.2d at 548–49. Also, the movant is confined to the specific grounds set forth in the motion. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex.1979). Tex.R.Civ.P. 166a(c). A summary judgment is proper only if the nonmovant cannot succeed on any of the theories pleaded as a basis for recovery. *Marshall v. Garcia*, 514 S.W.2d 513, 518 (Tex. Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.).

The summary judgment evidence conclusively establishes that in October 1984 Gatling was told by a neurologist, whom she had consulted for the purpose, that the painful neuromuscular condition from which she suffered was called "tardive dyskinesia" and that it was "associated" with drugs prescribed by Dr. Mauk. In our opinion, however, it cannot be concluded from what Gatling was told after this neurological examination that she was placed thereby on notice that she was the victim of medical malpractice by Dr. Mauk. Nothing in the disclosures related by her neurologist would make Gatling aware of those essential elements she was required to establish when asserting a cause of action under sections 6.01–6.07 of article 4590i. As part of such limited cause of action, Gatling was obliged to show that Dr. Mauk knew or should have known that the phenothiazine-type drugs he was prescribing for her have the side effects in some instances of causing tardive dyskinesia and that Dr. Mauk violated a duty he owed to her as his patient to alert her to this risk before prescribing these drugs. The diag-

nosis made by her neurologist does not go so far. While the diagnosis may have suggested that the drug manufacturer was liable for Gatling's injury, it would not necessarily have suggested that Dr. Mauk was also liable because of the circumstances under which he prescribed the drugs. Furthermore, limitations does not begin to run until the claimant discovers not only the injury but also its cause in fact. *See Corder v. A.H. Robins Co., Inc.*, 692 S.W.2d 194, 196 (Tex.App.—Eastland 1985, no writ). Gatling pleaded fraudulent concealment in bar of the limitations defense. There is no evidence that Gatling knew at the time of her neurological examination what the state of medical knowledge was about the side effects of long term use of phenothiazine-type drugs; nor is there any evidence that she knew that Stelazine, Prolixin, and Haldol which Dr. Mauk prescribed before October 1984 and the Moban which he prescribed thereafter are all phenothiazine-type drugs. In her deposition testimony, Gatling stated that she did not even "become critical" of Dr. Mauk's treatment of her until sometime near the end of 1985 when he told her he would not give her all the answers to her questions about what caused her neuromuscular disorder. Prior to that time, in answer to her questions about what was happening to her, Dr. Mauk had said, "Don't worry. It is okay." This colloquy is some evidence of Dr. Mauk's knowledge of the injury and of his fixed purpose to conceal it. *See Carrell v. Denton*, 138 Tex. 145, 147–48, 157 S.W.2d 878, 879 (1942). Also, the assurance he gave constitutes a medical opinion so at odds with the medical opinion communicated by Gatling's neurologist as to render the latter inconclusive on the issue of harm. We cannot, as a matter of law, fault a psychologically disturbed patient for relying on an opinion expressed by a psychiatrist under whose regular care she had been for four years to the exclusion of that of a physician she had consulted on only one occasion. When all this controverting evidence is taken as true under the standard in *Nixon*, a fact dispute exists as to when, within the confines of *Neagle*, Gatling should reasonably have discovered

Dr. Mauk's wrong and brought suit against him. *See Borderlon v. Peck*, 661 S.W.2d 907 (Tex.1983). Accordingly, we sustain Gatling's second point of error dealing with fraudulent concealment and Gatling's third point of error dealing with the movant's failure to negative disputed fact issues as to each of Gatling's alternative causes of action.

Because the errors just sustained are dispositive of the appeal, we do not address Gatling's first point of error which deals with the applicable statute of limitations in cases involving continuing torts.

The judgment of the trial court is reversed, and the cause is remanded for further proceedings.