Gertrude **ADKINS**, Billy Bob Adkins, Individually and as Guardian of Gertrude Adkins, and David Wayne Adkins, Appellants,

v.

Robert M. **TAFEL**, M.D., and Richard Boardman, Registered Pharmacist, Appellees.

No. 2–93–104–CV.

Court of Appeals of Texas, Fort Worth.

Feb. 16, 1994.

Rehearing Overruled March 30, 1994.

· Law Offices of Pat Maloney, P.C., and Scott Roberts, Janice Maloney, San Antonio, for appellants.

Decker, Jones, McMackin, McClane, Hall & Bates, and Randy J. Hall, Fort Worth, for appellees.

Richard E. Boardman, pro se.

Before LATTIMORE, DAY and FARRAR, JJ.

## OPINION

DAY, Justice.

Gertrude Adkins, Billy Bob Adkins, individually and as guardian of Gertrude Adkins, and David Wayne Adkins (the Adkins) appeal from a summary judgment for Robert M. Tafel, M.D., and Richard Boardman, Registered Pharmacist.

We affirm.

This appeal arises from a medical malpractice suit. The Adkins named Tafel, Boardman, and Stephen R. Neece, M.D., as defendants. All three defendants filed motions for summary judgment. The trial court granted Tafel's and Boardman's motions and denied summary judgment for Neece. The court then severed the Adkins' causes of action against Tafel and Boardman, and those judgments became final. Neece is not a party to this appeal.

The undisputed facts are as follows: In February 1980, Gertrude Adkins received a serious head injury in an automobile accident. Gertrude underwent surgery in January 1981, during which a ventriculoatrial shunt was placed in her head. Neece prescribed the drug Haldol for Gertrude in April 1981. Between 1981 and 1989, Gertrude had her Haldol prescription refilled numerous times. All but one of these refills were authorized by Neece. On one occasion, in November 1987, Tafel authorized a courtesy

refill of Gertrude's prescription. Boardman filled most of Gertrude's Haldol prescriptions.

Tafel served as Gertrude's treating physician from 1976 through April 1989. Although Gertrude had experienced tremors and facial movements for an unspecified amount of time, her condition worsened in the first half of 1989. During that time, Gertrude, her son David, and David's wife Pamela, confronted Tafel, asking him to explain what caused Gertrude's symptoms. Tafel opined that Gertrude would not get any better and advised the Adkins to "leave it alone."

In August of 1989, the Adkins first became suspicious that Gertrude's symptoms were related to medication after watching the Phil Donahue Show. (The program the Adkins watched was about Haldol and tardive dyskinesia.) On October 18, 1989, Dr. Robert McMichael first diagnosed Gertrude as suffering from Haldol-induced tardive dyskinesia and told the Adkins Gertrude should not be on Haldol. McMichael took Gertrude off all her medications. In 1989, David began searching for and consulting with attorneys to file a lawsuit on the Adkins' behalf.

In late October or early November 1989, David and Pamela went to the pharmaceutical and medical libraries in Austin to study Haldol and its side effects. They brought back five volumes, including a Physician's Desk Reference, the book "Worst Pills, Best Pills," by Dr. Sidney Wolfe, and three manuals about prescription drugs and their side effects. David and Pamela gave this information to Billy Adkins, Gertrude's husband, who read it. After reading the material, Billy concluded that Gertrude was suffering from the side effects of Haldol.

The Adkins eventually filed their lawsuit against Tafel, Boardman, and Neece on December 11, 1991. They sought recovery for Gertrude's personal injuries under the Medical Liability and Insurance Improvement Act (the Medical Liability Act). *See* TEX.REV.CIV. STAT.ANN. art. 4590i (Vernon Supp.Pamph. 1994). Tafel and Boardman moved for summary judgment based on the statute of limitations contained in article 4590i, section 10.-01. The Adkins responded by challenging the constitutionality of the statute of limitations as it applied to them. As we have previously noted, the trial court granted summary judgment for Tafel and Boardman, and the Adkins appeal from that ruling.

The Adkins raise five points of error on appeal. In points one, two, three, and five, they complain the trial court improperly granted summary judgment for Tafel and Boardman because a material fact issue exists about whether the article 4590i statute of limitations violates the open courts provision of the Texas Constitution. In point four, the Adkins complain the trial court improperly granted summary judgment for Tafel because a material fact issue exists as to whether he fraudulently concealed the Adkins' cause of action from them.

In a summary judgment case, the issue on appeal is whether the movant met his burden for summary judgment by establishing that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex. 1979); TEX.R.CIV.P. 166a. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence in the light most favorable to the nonmovant. *See id.* In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984); *Farley v. Prudential Ins. Co.,* 480 S.W.2d 176, 178 (Tex.1972). Every reasonable inference from the evidence must be indulged in favor of the nonmovant and any doubts resolved in his favor. *Montgomery,* 669 S.W.2d at 311. Evidence which favors the movant's position will not be considered unless it is uncontroverted. *Great American,* 391 S.W.2d at 47.

■ In order to be timely, a suit filed under the Medical Liability Act must be brought within two years of one of three

dates: (1) the occurrence of the breach or tort; (2) the date the health care treatment that is the subject of the claim is completed; or (3) the date the hospitalization for which the claim is made is completed. TEX.REV. CIV.STAT.ANN. art. 4590i, § 10.01 (Vernon Supp.Pamph.1994); *Rowntree v. Hunsuker*, 833 S.W.2d 103, 104 (Tex.1992). Generally, the article 4590i statute of limitations runs from the date of the breach or tort, if that date is readily ascertainable. *Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex.1987). If the alleged breach occurred at an undetermined time during a period of ongoing treatment or hospitalization, the statute of limitations runs from the date on which the treatment or hospitalization ended. *Id.* The Adkins have made no claim against a hospital, so the statute of limitations must run from the date of the alleged tort or from the last date of treatment.

## SUMMARY JUDGMENT FOR TAFEL.

### A. Statute of limitations.

■ Despite the summary judgment evidence that Tafel prescribed Haldol for Gertrude only once (in November 1987), Tafel contends the statute of limitations in his case began running from his last treatment of Gertrude on April 17, 1989. Assuming, without deciding, that Tafel is correct in using the latter date, for purposes of this opinion, we will adopt April 17, 1989 as the date the statute of limitations began to run.

In *Gaddis v. Smith*, 417 S.W.2d 577 (Tex. 1967), a medical malpractice case, our supreme court adopted the "discovery rule," which provided that the statute of limitations did not begin to run in this type of case until the patient learned of, or in the exercise of reasonable care and diligence, should have learned of, the alleged malpractice. *Id.* at 580; *see also Nelson v. Krusen*, 678 S.W.2d 918, 920 (Tex.1984).

With the passage of article 4590i, section 10.01, however, the legislature intended to abolish the discovery rule in cases governed by the Medical Liability Act. *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex.1985). Although the 4590i statute of limitations is subject to a constitutional challenge under the open courts provision of the Texas Constitution, if an injured person discovers his or her injury while there is still a reasonable time to sue within the statutory period, the statute of limitations is not unconstitutional as applied to that individual. *Id.* at 207.

The act or omission that was the basis of the lawsuit in the *Morrison* case occurred on February 13, 1980. On that date, Gray (the decedent—Morrison was administrator of Gray's estate) received radium treatments for cervical cancer. *Morrison*, 699 S.W.2d at 206, 208. Approximately six months later, Gray was diagnosed as having a hole in her bladder. She had approximately eighteen months left within the limitations period to bring suit. The Texas Supreme Court held Gray's failure to file suit within the applicable period barred her recovery. *Id.* at 208.

■ Turning to the Adkins' situation, the acts or omissions that form the basis of their lawsuit are: (1) Tafel's one prescription of Haldol for Gertrude without appropriate trials of less hazardous drugs; (2) Tafel's failure to disclose to Gertrude or her family the risks and hazards of *prolonged* use of drugs such as Haldol; and (3) Tafel's failure to properly monitor Gertrude, *e.g.*, his failure to examine her and recognize the effects of Haldol. Of necessity, the very latest of these alleged wrongs occurred on April 17, 1989, the date on which Tafel last saw Gertrude in his office.

Approximately four months later, in August 1989, the Adkins first began to suspect Gertrude's problems were related to Haldol after watching the Phil Donahue show. On October 18, 1989, six months after Tafel's last treatment, Dr. McMichael diagnosed Gertrude as suffering from drug-induced tardive dyskinesia. McMichael advised the Adkins that Haldol was one of the drugs that had caused Gertrude's condition, told the Adkins Gertrude should not be on Haldol, and took Gertrude off all her medications.

In October 1989, the Adkins had approximately eighteen months left within the limitations period to bring suit. Based on the *Morrison* decision, the Adkins' failure to file suit within the applicable period bars their recovery. *See Morrison*, 699 S.W.2d at 208.

The Adkins concede they knew of Gertrude's Haldol-induced tardive dyskinesia in October 1989. In fact, David Adkins attested to this fact in his affidavit in support of the Adkins' response to motion for summary judgment. Even so, the Adkins assert they did not discover the nature of Gertrude's injury or that they had a cause of action until November 1991. They contend the nature of Gertrude's injury is not that she developed tardive dyskinesia by taking Haldol. Instead, they assert her injuries are that Tafel: (1) failed to properly monitor Gertrude for tardive dyskinesia while she was taking Haldol; (2) failed to prescribe Haldol without appropriate trials of less hazardous drugs; and (3) failed to inform Gertrude of the risks associated with Haldol, especially the development of tardive dyskinesia.

We are unpersuaded by the Adkins' characterization of Tafel's alleged acts and omissions as Gertrude's injuries. While the Adkins could properly allege this conduct *caused* Gertrude's injury—her tardive dyskinesia—their argument that Tafel's actions *are* Gertrude's injuries is illogical. The only injury the Adkins complain of is Gertrude's tardive dyskinesia. They readily acknowledge they knew of this condition six months after Tafel's last treatment of Gertrude. Accordingly, we conclude no issue of material fact exists as to whether the Adkins discovered Gertrude's injury in enough time to bring suit within the article 4590i statute of limitations.

Ordinarily, our holding would be dispositive of a challenge to the constitutionality of article 4590i, section 10.01. Relying on *Hellman v. Mateo*, 772 S.W.2d 64 (Tex.1989), however, the Adkins assert the correct standard for determining if the absolute two-year bar violates the open courts provision is whether the claimant had a reasonable opportunity to: (1) discover the nature of the injury *and the cause of action* and (2) bring suit within the two-year period. *See id.* at 66. They contend they did not learn of their cause of action until November 1991 when Dr. Dilip Jeste, their lawyer's medical expert, first confirmed that Tafel had committed malpractice.

The salient facts in *Hellman* are as follows: In January 1983, a lymph node was removed from Hellman's neck and biopsied. Dr. Mateo diagnosed the lump in the lymph node as benign and wrote a pathology report to that effect. The report was placed in Hellman's file on January 10, 1983. On August 24, 1984, a second lymph node was removed and biopsied. This lymph node was reported as showing Hodgkin's disease. Although the disease first appeared to be in its early stage, on September 4, 1984, it was discovered to be in a more advanced stage, with more serious repercussions. In January 1985, Hellman contacted a lawyer to inquire about the possibility of bringing a medical negligence claim. *Hellman*, 772 S.W.2d at 65. It was March 1985, however, when Hellman first obtained conclusive information about Mateo's error in reading the January 1983 slide. Hellman obtained this information when she had the slide re-examined by another pathologist. *Hellman v. Mateo*, 751 S.W.2d 623, 624 (Tex.App.—Houston [1st Dist.] 1988), *rev'd and remanded*, 772 S.W.2d 64 (Tex.1989).

In response to Hellman's summary judgment evidence that article 4590i was unconstitutional as applied to her, Mateo merely contended Hellman could have discovered his misdiagnosis when she learned of the advanced stage of the disease in September 1984. The Texas Supreme Court held a question of fact existed about whether Hellman knew or should have known about Mateo's misdiagnosis on or before January 10, 1985. *Hellman*, 772 S.W.2d at 66.

There are several important factual differences between the Adkins' case and Hellman's situation: Hellman first learned Mateo had misdiagnosed her January 1983 biopsy in March 1985 when Hellman had a second doctor re-examine the slide. Before that time, there is no evidence she knew of Mateo's misdiagnosis. All Hellman knew was that, on September 4, 1984, her Hodgkin's disease was discovered to be in a more advanced stage than the August 24, 1984 biopsy first showed.

The Adkins, however, first suspected that Haldol was the cause of Gertrude's problems as early as August 1989. In October 1989,

Dr. McMichael confirmed that Gertrude was suffering from Haldol-induced tardive dyskinesia, told her family that she should not be on Haldol, and took her off that medication. In November 1989, after reading several books on Haldol and its side effects, Billy Adkins became convinced Haldol was the cause of Gertrude's tremors and involuntary facial movements. They were also well aware that Tafel had prescribed Haldol for Gertrude. Thus, the Adkins discovered both their injury and its cause seventeen to eighteen months before the statute of limitations ran. Hellman was not informed of Mateo's misdiagnosis until March 1985, about two months *after* the 4590i statute of limitations ran on January 10, 1985.

Although we cannot say why the *Hellman* court stated article 4590i can be unconstitutional as applied if it cuts off a cause of action before the plaintiff knew of the injury *and* the cause of action itself, *see id.* at 66, we note our supreme court's definition of "cause of action" in *Borderlon v. Peck,* 661 S.W.2d 907 (Tex.1983):

> The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action. *Knowledge of such facts is in law equivalent to the cause of action.*

*Id.* at 909 (emphasis added). From this definition, we read the *Hellman* court's statement to mean article 4590i cannot be applied to cut off a cause of action before the plaintiff knew of the injury or of the facts giving rise to her cause of action. The Adkins acknowledge that, as early as October 1989, they knew: (1) of their mother's injury—her Haldol-induced tardive dyskinesia; and (2) of the facts giving rise to their cause of action—that Gertrude should not have been on Haldol in the first place and that Tafel had prescribed it for her. Thus, we conclude the article 4590i statute of limitations is not unconstitutional as applied to the Adkins, even in light of the *Hellman* decision.

Our examination of Texas case law reveals that the constitutionality of the article 4590i statute of limitations, as applied to a particular situation, turns on when the plaintiff acquired knowledge of: (1) the injury; (2) its cause; and (3) the identity of the potentially culpable party. *See Hellman,* 772 S.W.2d at 66 (misdiagnosis of lymph node biopsy); *Morrison,* 699 S.W.2d at 208 (hole in bladder discovered six months after radiation treatments); *Neagle v. Nelson,* 685 S.W.2d 11, 12 (Tex.1985) (surgical sponge left in abdomen after appendectomy not discovered for more than two years after procedure); *Nelson,* 678 S.W.2d at 920, 923 (expectant mother advised that she was not a genetic carrier of muscular dystrophy discovered, over three years later, that her son had muscular dystrophy); *Hays v. Hall,* 488 S.W.2d 412, 413–14 (Tex. 1972) (unsuccessful vasectomy operation); *Gaddis,* 417 S.W.2d at 580 (sponge left in surgical patient); *DeLuna v. Rizkallah,* 754 S.W.2d 366, 367 (Tex.App.—Houston [1st Dist.] 1988, writ denied) (doctor's misinterpretation of echocardiograms first discovered by medical expert more than two and three years after error).

The Adkins' knowledge of each of these three matters well within the statutory period is what distinguishes their situation from the cases on which they rely. They cannot avoid summary judgment merely by alleging they did not know they had a lawsuit against Tafel until their lawyer's expert informed them Tafel had committed malpractice. Adherence to this line of reasoning would discourage due diligence by prospective plaintiffs, and it would allow litigants to bring suits for an indefinite period of time, even if they discovered their injuries well within the statutory period. We do not believe the legislature intended such a result when it enacted the Medical Liability Act.

The Adkins also rely on *Gatling v. Perna,* 788 S.W.2d 44 (Tex.App.—Dallas 1990, writ denied) and *Krueger v. Gol,* 787 S.W.2d 138 (Tex.App.—Houston [14th Dist.] 1990, writ denied). While these cases require both a knowledge of the injury and of its cause, they do not support the Adkins' argument that a plaintiff cannot know of her cause of action until her lawyer tells her she has one.

The issue in *Krueger* was whether the statute of limitations ran from the date of the tort or from the last date of treatment.

*Krueger,* 787 S.W.2d at 140. The Houston court based its determination on the fact that the plaintiff complained of a *procedure,* back surgery, rather than a continuing course of treatment. *Id.* Whether the plaintiff could have known of her cause of action before consulting a lawyer was never discussed.

■ The *Gatling* court was also called upon to decide whether the statute of limitations ran from the last date of treatment or from an earlier date, when a neurologist had informed Gatling she had drug-induced tardive dyskinesia. *Gatling* was a fraudulent concealment case, however. *Gatling,* 788 S.W.2d at 47. The estoppel effect of fraudulent concealment lasts until a party learns of facts, conditions, or circumstances that would cause a reasonably prudent person to make inquiry that, if pursued, would lead to discovery of the concealed cause of action. *Borderlon,* 661 S.W.2d at 909. As we will discuss later in this opinion, there is no evidence Tafel fraudulently concealed anything from the Adkins. Thus, *Gatling* is inapposite here.

We find no fact issue exists about whether the Adkins discovered or could have discovered their injury, its cause, and the identity of potentially culpable parties while there was still a reasonable time to sue within the statutory period. The mere fact that the Adkins could not find a lawyer to file their suit until after it was time-barred does not affect the constitutionality of the statute. We therefore hold the article 4590i, section 10.01, statute of limitations is constitutional as applied to the Adkins.

Points of error one and three are overruled.

**B. Fraudulent concealment.**

In point of error four, the Adkins complain summary judgment for Tafel was improper because an issue of material fact exists about whether Tafel fraudulently concealed their cause of action from them.

■ Article 4590i, section 10.01, does not abolish fraudulent concealment as a basis for extending limitations in health care liability actions. *Borderlon,* 661 S.W.2d at 909. To show entitlement to the estoppel effect of fraudulent concealment, however, the party asserting this defense must establish the defendant had: (1) actual knowledge of the wrong; (2) a duty to disclose the wrong; and (3) a fixed purpose to conceal the wrong. *Waters ex rel. Walton v. Del–Ky, Inc.,* 844 S.W.2d 250, 256 (Tex.App.—Dallas 1992, no writ); *Baskin v. Mortgage and Trust, Inc.,* 837 S.W.2d 743, 746 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Thus, the Adkins were required to show Tafel had actual knowledge of the facts he allegedly concealed and that he had a fixed purpose to conceal those facts. Our examination of the record reveals no such evidence.

At his deposition, David Adkins testified that Tafel, when questioned about Gertrude's condition, opined that Gertrude would not get any better and advised the Adkins to "leave it alone." The Adkins direct us to no other evidence of fraudulent concealment and, contrary to the Adkins' inferences in their brief, there is no evidence in the record that Tafel ever affirmatively assured the Adkins everything was or would be "okay."

Tafel's one statement to the Adkins about Gertrude's condition does not raise a fact issue about whether Tafel knew Haldol was harmful to Gertrude and caused her condition or about whether he was purposefully concealing this knowledge. Instead, it serves to support Tafel's affidavit in support of his motion for summary judgment:

It is my opinion that the mental and physical problems suffered by Gertrude Adkins were the result of her automobile accident and subsequent trauma to her brain by her aspiration of some food as pointed out above, or that her symptoms and problems as alleged by the Plaintiffs in their Original Petition are consistent with these traumatic insults to her brain and nervous system of Gertrude Adkins. I never misrepresented any facts to any member of the Adkins family, and always answered any questions any of them may have had fully based on my medical training and experience. I never intentionally withheld any information from any member of the Adkins family concerning Gertrude Adkins's medical condition, diagnosis, prognosis, the use and effect of medication she

was taking, or the reasons for the medication.

Even assuming, for argument's sake, that Tafel was wrong in his assessment of Gertrude's condition, his misdiagnosis does not, in and of itself, constitute fraud or expose him to the imputation of fraudulent concealment. *Carrell*, 157 S.W.2d at 879.

We hold the Adkins' allegations of Tafel's alleged fraudulent concealment are just that: bare allegations unsupported by the summary judgment evidence. Consequently, the Adkins cannot avoid summary judgment on this ground.

The Adkins rely on *Dougherty v. Gifford*, 826 S.W.2d 668 (Tex.App.—Texarkana 1992, no writ) and *Evans v. Conlee*, 741 S.W.2d 504 (Tex.App.—Corpus Christi 1987, no writ), neither of which is on point in this instance. The issue in *Evans* was not whether the plaintiff had raised a fact issue concerning fraudulent concealment. Rather, the parties disagreed about when the plaintiff had learned of her cause of action. *Evans*, 741 S.W.2d at 506, 509.

The *Dougherty* court stated that silence in the face of a duty to disclose *may* be an act of concealment. *Dougherty*, 826 S.W.2d at 675 (citing *Borderlon*, 661 S.W.2d at 908). The Adkins cite this language to show that Tafel's failure to inform them of Haldol's side effects may have been evidence of his fixed purpose to conceal his malpractice.

The plaintiff in *Dougherty* sued two doctors: his surgeon and the pathologist his surgeon hired to perform a biopsy on the plaintiff's tissue. The surgeon never informed the plaintiff of the pathologist's existence or services, and the Texarkana court found the *pathologist* had a duty to disclose to the plaintiff his identity and involvement in the biopsy. *Id.* at 675–76. The court found the pathologist's failure to disclose was some evidence of a fixed purpose to conceal his existence until the statute of limitations ran. *Id.* at 673, 675–76. Such is not the case before us. Since the Adkins have not established Tafel *knew* anything he should have disclosed to them, they cannot point to his silence as evidence of his fixed purpose to conceal.

We overrule point of error four.

## SUMMARY JUDGMENT FOR BOARDMAN.

■ In points of error two and five, the Adkins complain the trial court improperly granted summary judgment for Boardman because a fact issue exists as to whether the 4590i statute of limitations, as applied to their cause of action against Boardman, violates the open courts provision of the Texas Constitution. In the conclusion of their brief, the Adkins ask us to reverse the summary judgment for Boardman. They present no argument or legal authority to support their contention that summary judgment for Boardman was improper. In fact, Boardman's name is hardly mentioned, except in the brief references noted above. Accordingly, we find the Adkins' points of error as to Boardman are waived on appeal. TEX. R.APP.P. 74(f); *Lakeway Land Co. v. Kizer*, 796 S.W.2d 820, 827 (Tex.App.—Austin 1990, writ denied). In addition, the Adkins' counsel conceded at oral argument that they are challenging only the summary judgment for Tafel.

We overrule points of error two and five.

The judgment of the trial court is affirmed.