**Paula LaGESSE, Appellant,**

v.

**PRIMACARE, INC. et al., Appellees.**

No. 11–94–086–CV.

Court of Appeals of Texas,
Eastland.

May 18, 1995.

Rehearing Overruled June 15, 1995.

Tom Needham, Needham, Johnson, Lovelace & Johnson, Dallas, for appellant.

Robert H. Frost, Gwinn & Roby, & Margaret N. Masters, Stephen P. Amis, Robert C. Brown, Bailey & Williams, Dorothy Prengler, Johnson & Sylvan, Dallas, for appellees.

McCLOUD, Chief Justice (Retired).

This medical malpractice case involves the two-year statute of limitations. The trial court granted the defendants' motions for summary judgment. Plaintiff appeals. We affirm.

Paula LaGesse sued Doctors Eugene R. Osborn, George Mekker, Sara L. Chapman, Daniel K. Leong, Michael C. Nolen, and PrimaCare, Inc. alleging negligent medical treatment. Plaintiff alleged that Doctors Osborn, Leong, and Nolen were employees or agents of PrimaCare. Plaintiff contended that the individual doctors, at different times, negligently administered systemic steroid treatment for a rash which caused bilateral avascular necrosis involving the femoral heads that required bilateral hip replacement.

Steroids were administered to plaintiff for treatment of her rash by the doctors on the dates indicated:

| | |
|---|---|
| Dr. Osborn | December 31, 1988 |
| Dr. Mekker | October 13, 20, 1989, and December 1, 1989 |
| Dr. Chapman | November 13, 1989, and January 23, 1990 |
| Dr. Leong | March 4, 1990 |
| Dr. Nolen | March 12, 1990 |

Plaintiff first started experiencing hip pain in January of 1991. In the summer of 1991, she saw Dr. Ralph Rashbaum for the pain and a "pronounced limp" that had developed. Dr. Rashbaum referred her to Dr. Neal Small. According to her deposition testimony, Dr. Small told plaintiff sometime between August 7, 1991, and September 9, 1991, that the problem with her hips was probably caused by the steroids. Plaintiff stated that Dr. Small told her that steroids were the "most common cause" for the condition that she had with her hips. After her visit with Dr. Small, there was no question in "her mind" that her hip problems were related to the injection or the oral intake of steroids over a period of time. On September 10, 1991, Dr. Small performed a hip replacement on plaintiff's left hip. Plaintiff was discharged from the hospital on September 15, 1991. Following her discharge, plaintiff first contacted her lawyer on September 16, 1991. On July 28, 1992, Dr. Small performed a hip

replacement on plaintiff's right hip. Plaintiff filed the present suit against the defendants on September 10, 1992.

■ In moving for summary judgment upon the affirmative defense of the statute of limitations, the defendants had the burden of establishing that, as a matter of law, there were no material questions of fact as to the essential elements of the defense. *Rowntree v. Hunsucker*, 833 S.W.2d 103 (Tex.1992).

The Medical Liability and Insurance Improvement Act, TEX.REV.CIV.STAT.ANN. art. 4590i, § 10.01 (Vernon Pamph.Supp. 1995) provides that, notwithstanding any other law, no health care liability claim may be commenced unless suit is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim is completed. *Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex.1987). This statute adopted an absolute two-year limitations period and abolished the "discovery rule" in health care liability claims. *Morrison v. Chan*, 699 S.W.2d 205 (Tex.1985).

Our supreme court in *Neagle v. Nelson*, 685 S.W.2d 11 (Tex.1985) and *Nelson v. Krusen*, 678 S.W.2d 918 (Tex.1984), held that the statutory two-year limitations period was unconstitutional under the "open courts" provision of the Texas Constitution, TEX. CONST. art. I, § 13, to the extent that it purports to cut off an injured person's right to sue before the person has a reasonable opportunity to discover the "wrong" and bring suit. Later, in *Morrison v. Chan, supra*, the supreme court stated that *Neagle v. Nelson*, supra, and *Nelson v. Krusen*, supra, were premised on the fact that it was not possible for the parties to discover the "injury" within the two-year period.

The two-year limitations period ran against the different doctors on the dates indicated:

Dr. Osborn      December 31, 1990;
Dr. Mekker      December 1, 1991;
Dr. Chapman     January 23, 1992;
Dr. Leong       March 4, 1992;
Dr. Nolen       March 12, 1992.

Doctors Mekker, Chapman, Leong, and Nolen maintain that, since plaintiff did not file her lawsuit until September 10, 1992,

long after the two-year limitations period had run, plaintiff's suit is time-barred. Plaintiff argues that the uncontroverted affidavit of her attorney in response to defendants' motions for summary judgment raises a material question of fact as to whether plaintiff had a reasonable opportunity to discover the wrong and file her suit prior to the expiration of the limitations period. Plaintiff also contends that the two-year limitations period, as applied to plaintiff, violates the "open courts" provision of Article I, section 13 of the Texas Constitution. In his affidavit, plaintiff's attorney described in detail his procedure in handling medical negligence cases. He discussed the time-consuming investigations that are required. Part of the procedure was locating and consulting with appropriate medical experts. The attorney stated that it was his usual custom and practice not to file a medical negligence case until at least one board certified medical expert had rendered a written report stating that, in the expert's opinion, there had been a violation of the accepted standard of care. The attorney further stated in his affidavit:

> I have read the Defendants' Motions for Summary Judgment, and I am familiar with the legal and factual issues presented therein relating to the statute of limitations defenses asserted by the Defendants. During my practice as an attorney, I have accepted and handled approximately 100 medical negligence cases. In addition, I have reviewed over 1,000 other potential medical negligence claims which our firm declined or the potential Plaintiff elected not to pursue.

> By September 9, 1991, Ms. LaGesse had reason to believe that systemic steroids could have caused her bilateral avascular femoral head necrosis. A medical expert rendered a written opinion on June 24, 1992, that the administration of systemic steroids to Ms. LaGesse had been a violation of the accepted standard of care with respect to the health care rendered to the Plaintiff by Defendants herein which resulted in damages to Plaintiff. Suit was filed against such Defendants on September 10, 1992.

In my opinion, Plaintiff did not have a reasonable opportunity to discover the wrong and bring suit against any of the Defendants herein within the two year limitations period prescribed by § 10.01 of Article 4590i applicable to any of the Defendants herein.

It is my opinion that Plaintiff's lawsuit was filed within a reasonable amount of time after Plaintiff first had a reasonable opportunity to discover the nature of Plaintiff's injury.

■ Plaintiff maintains that she did not discover the "wrong" until the medical expert in "June of 1992" determined that the defendants' acts in administering steroids to plaintiff violated accepted standards of medical care. The critical inquiry is when did the plaintiff discover the "injury." This court held in *Corder v. A.H. Robins Company, Inc.*, 692 S.W.2d 194 (Tex.App.—Eastland 1985, no writ), a "discovery rule" case involving the use of the "Dalkon Shield," that Mrs. Corder's cause of action did not accrue until she discovered her injury and the "cause." We think that the words "injury" or "wrong," when used in the context of the discovery period, require both the discovery of the injury and its cause.

■ Plaintiff discovered several months before the two-year limitations period had run against Doctors Mekker, Chapman, Leong, and Nolen that her injury was probably caused by the steroids the doctors had administered to her. Furthermore, she knew the identity of the doctors who caused her injury.

The court in *Adkins v. Tafel*, 871 S.W.2d 289 (Tex.App.—Fort Worth 1994, no writ), stated:

Our examination of Texas case law reveals that the constitutionality of the article 4590i statute of limitations, as applied to a particular situation, turns on when the plaintiff acquired knowledge of: (1) the injury; (2) its cause; and (3) the identity of the potentially culpable party.

\* \* \* \* \* \*

The Adkins' knowledge of each of these three matters well within the statutory period is what distinguishes their situation

from the cases on which they rely. They cannot avoid summary judgment merely by alleging they did not know they had a lawsuit against Tafel until their lawyer's expert informed them Tafel had committed malpractice. Adherence to this line of reasoning would discourage due diligence by prospective plaintiffs, and it would allow litigants to bring suits for an indefinite period of time, even if they discovered their injuries well within the statutory period. We do not believe the legislature intended such a result when it enacted the Medical Liability Act.

We point out that the supreme court in *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348 (Tex.1990), while discussing the "discovery rule," cited with approval *Otis v. Scientific Atlanta, Inc.*, 612 S.W.2d 665, 666 (Tex.Civ. App.—Dallas 1981, writ ref'd n.r.e.), which held that limitations run from the date the "injury" is discovered, not from the date of the discovery of the responsible party.

Plaintiff cites *Hellman v. Mateo*, 772 S.W.2d 64 (Tex.1989), and *Gatling v. Perna*, 788 S.W.2d 44 (Tex.App.—Dallas 1990, writ den'd), to support her contention that the critical inquiry is when did plaintiff discover her cause of action. Both *Hellman* and *Gatling* were properly distinguished in *Adkins.* The *Adkins* court stated that *Hellman* held that Article 4590i cannot be applied to cut off a cause of action before the plaintiff knew of the injury or "of the facts giving rise to her cause of action." The *Adkins* court distinguished *Gatling* because it was essentially a fraudulent concealment case. The court in *Desiga v. Scheffey*, 874 S.W.2d 244 (Tex. App.—Houston [14th Dist.] 1994, no writ), further distinguished *Gatling* by pointing out that the court made special allowances for the fact that the injured party was a psychiatric patient whom the court could not fault for giving greater credibility to her psychiatrist's lack of concern for the symptoms she complained of than to another physician she had only seen once who told her the drugs prescribed by her psychiatrist had resulted in her having tardive dyskinesia.

Plaintiff discovered several months before the two-year statute of limitations had run against Doctors Mekker, Chapman, Leong,

and Nolen that her injury was probably caused by the steroids the doctors had administered to her. We hold that the summary judgment evidence, notwithstanding the attorney's affidavit, established that plaintiff discovered her injury and had a reasonable opportunity to file her suit against these doctors within the statutory limitations period.

The attorney's internal operating procedures and professional decisions should not determine whether the plaintiff had a "reasonable opportunity" to file her suit within the two-year period. This is not a case where the discovery of the injury occurred just before limitations ran and the plaintiff was unable to retain a lawyer and get her case filed within the limitations period. Here, plaintiff discovered her injury and its cause and retained her attorney several months before limitations ran.

 Dr. Osborn administered steroids to plaintiff on December 31, 1988. The two-year limitations period ran as to Dr. Osborn on December 31, 1990. The summary judgment proof does not establish that plaintiff had a reasonable opportunity to discover her injury and to bring suit against him within the two-year period. The summary judgment proof was that plaintiff discovered her injury between August 7, 1991, and September 9, 1991, after limitations had run. Therefore, the "open courts" provision of the Texas Constitution protects plaintiff from the statutory two-year limitations period which would cut off plaintiff's right to sue Dr. Osborn before she had a reasonable opportunity to discover her injury. *Neagle v. Nelson,* supra; *Nelson v. Krusen,* supra.

The question now presented was raised in a concurring opinion by Justice Kilgarlin in *Neagle:* When must plaintiff file her suit after discovering her injury? Justice Kilgarlin cited *Hawkins v. Safety Casualty Co.,* 207 S.W.2d 370 (Tex.1948), where the workers' compensation claimant had not timely filed his compensation claim, and stated that "reasonableness" of delay before filing suit after discovery of the injury would ordinarily be a question of fact. *Hawkins* involved a 9–day delay in filing the claim after discovering the injury. The case cited in *Hawkins, Texas*

*Employers Ins. Ass'n v. Fowler,* 140 S.W.2d 545 (Tex.Civ.App.—Amarillo 1940, writ ref'd), involved a 23–day delay in filing the claim. It is apparent from the Medical Liability and Insurance Improvement Act that the legislature intended that health care liability claims be timely filed.

In the present case, the plaintiff did not file her suit against Dr. Osborn until approximately one year after she had discovered her injury and retained her attorney. As stated in *Hawkins,* a reasonable time should be allowed for investigating, preparing, and filing a suit after discovering the injury. We hold that, as a matter of law, plaintiff did not file her suit against Dr. Osborn within a reasonable time after discovering her injury. All of plaintiff's points of error are overruled.

The judgment of the trial court is affirmed.

McCLOUD, C.J., Retired, Court of Appeals, Eastland, sitting by assignment pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

WRIGHT, J., not participating.