**REVISED**

## UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

No. 95-21058

SUSAN HALL,

Plaintiff-Appellant,

versus

DOW CORNING CORPORATION, ET AL.,

Defendants,

and

RAYMOND REID, Dr.,

Defendant-Appellee.

Appeal from the United States District Court
For the Southern District of Texas

May 23, 1997

Before POLITZ, Chief Judge, EMILIO M. GARZA and STEWART, Circuit Judges.

POLITZ, Chief Judge:

This case involves the propriety of granting a motion for summary judgment in a medical malpractice and fraud case. Finding no reversible error, the judgment of the district court is affirmed.

**BACKGROUND**

Prior to 1981 Susan Hall was involved in several automobile accidents, later developing severe jaw pain, including restriction in its range of motion. In 1981

Dr. Harry Baddour performed surgery on both sides of Hall's jaw for a degenerative condition of her temporomandibular joints ("TMJ"). When the pain failed to subside, Dr. Baddour referred Hall to Dr. Raymond Reid.[1]

After a series of visits, Dr. Reid recommended surgery and on June 10, 1982, performed a bilateral TMJ operative procedure. The surgery involved a bilateral osteoplasty with disc tie back and the insertion of implant prostheses in the temporomandibular joints. Dr. Reid placed a Proplast I-Teflon implant manufactured by Vitek in the right side of Hall's jaw and an implant carved from Silastic block material in the left side.

Almost immediately after the surgery Hall complained to Dr. Reid of multiple complications. Specifically, Hall alleges that shortly after the surgery she began experiencing severe pain in her right jaw, dizziness, and headaches. Because of these complications, approximately a year after the original surgery Dr. Reid scheduled Hall for surgical removal of the Proplast-Teflon implant. Hall, however, canceled the scheduled surgery. She then moved to Tennessee where, in January of 1984, she sought services of a TMJ clinic. The parties dispute whether Hall advised the Tennessee health care providers of her past medical history, including the two mismatched prostheses in her jaw, but medical records from the

---

[1]Although the parties dispute which doctor referred Hall to Dr. Reid, "'[t]he evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in [her] favor.'" **Eastman Kodak Co. v. Image Technical Servs., Inc.**, 504 U.S. 451, 456 (1992) (quoting **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 255 (1986)). "Mindful that [Hall's] version of any disputed issue of fact thus is presumed correct, we begin with the factual basis of [her] claims." **Id.** (citing **Arizona v. Maricopa County Med. Soc'y**, 457 U.S. 332 (1982)).

Tennessee clinic reflect that they were aware of the previous procedures. The parties also dispute whether Hall gave a history of having a left Silastic implant and a right Proplast implant in 1987 when she visited Dr. Hugh Hall, no relation, also from Tennessee. Ms. Hall contends that Dr. Hall gave her no information about problems associated with Proplast implants. Dr. Hall, however, attests that he related to Ms. Hall known problems associated with the Proplast implant and the likelihood that her pain was derived from a foreign body reaction to the Proplast-Teflon material. Medical records from the relevant visit support Dr. Hall's affidavit.[2] Dr. Hall recommended a one year follow up visit to evaluate the need for surgery, but Ms. Hall never returned. Finally, on February 13, 1992, another doctor removed the prostheses.

In June of 1992 Ms. Hall filed suit against Dow Corning Corporation and Dr. Reid. In 1993 Hall added the Methodist Hospital and E.I. Dupont De Nemours as defendants. Hall dismissed all parties, other than Dr. Reid, prior to the summary judgment at issue on appeal. In her First Amended Complaint, she asserts three grounds of recovery against Dr. Reid: (1) negligence; (2) "clinical trial;"[3] (3) failure to warn; (4) fraud; and (5) the Texas Deceptive Trade Practices Act ("DTPA"). Dr. Reid moved for summary judgment on all theories of liability,

---

[2]Despite this evidence, for purposes of today's disposition we accept as true that Dr. Hugh Hall did not tell Ms. Hall about the known problems with Proplast-Teflon implants.

[3]This claim merely asserts that Dr. Reid deviated from the applicable standard of care by implanting prostheses in Hall's TMJ that were not intended for use as load bearing joints. Thus, according to Hall, such implantation was an unauthorized experiment of sorts.

contending that the Medical Liability and Insurance Improvement Act ("MLIIA") barred the DTPA claim, that applicable statutes of limitations barred all but the fraud claim, and that medical records conclusively negated essential elements of the fraud claim. The district court granted Dr. Reid's motion on the DTPA claim, holding that the MLIIA barred a DTPA cause of action against him. The court further held that Hall's negligence, clinical trial, and failure to warn claims were simply medical negligence claims covered by the MLIIA, which were barred by the MLIIA's two-year statute of limitations. The court, on its own motion, granted summary judgment on the fraud claim based on limitations. The court found that Hall knew or should have known of the basis for a fraud claim against Dr. Reid no later than 1987, but failed to file suit until 1992.

Ms. Hall does not contest the district court's ruling on her DTPA claim. She presents only two issues for resolution on appeal: (1) whether the trial court properly applied the MLIIA's two-year statute of limitations to the negligence, failure to warn, and clinical trial claims, and (2) whether the trial court properly granted summary judgment on her fraud claim.

## ANALYSIS

### A. Standard of Review

We review a summary judgment de novo, applying the same standards as used by the district court, reviewing the facts and drawing inferences in favor of the nonmoving party.[4] Summary judgment is only proper when there is no genuine

---

[4]**Elliott v. Lynn**, 38 F.3d 188 (5th Cir. 1994), cert. denied, 115 S.Ct. 1976 (1995).

issue as to any material fact and the moving party is entitled to judgment as a matter of law.[5] Once the moving party meets its Rule 56 burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."[6] Moreover, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."[7] To determine whether material issues of fact exist, the court must consult the applicable substantive law to ascertain the facts that indeed are material. Texas law is dispositive of all issues on appeal.[8]

## B. Texas Medical Liability and Insurance Improvement Act

The MLIIA applies to all "health care liability" claims, which the Act defines as follows:

> "Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.[9]

---

[5]FED. R. CIV. P. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317 (1986).

[6]**Matsushita Elec. Indus. Co. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986).

[7]**Anderson**, 477 U.S. at 248 (citing FED. R. CIV. P. 56 (e)).

[8]**Erie R.R. Co. v. Tompkins**, 304 U.S. 64 (1938).

[9]TEX. REV. CIV. STAT. ANN. art. 4590i, § 1.03(a)(4) (Vernon Supp. 1992).

Hall's negligence, "clinical trial," and failure to warn claims are thus claims falling within the purview of the MLIIA.  As MLIIA claims they are subject to the Act's two-year statute of limitations:

> Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed;  provided that, minors under the age of 12 years shall have until their 14th birthday in which to file, or have filed on their behalf, the claim.  Except as herein provided, this subchapter applies to all persons regardless of minority or other legal disability.[10]

Because Hall's surgery occurred in 1982, the date the challenged health care treatment was completed, her failure to file suit until 1992, as a general proposition, bars the present action.

In **Neagle v. Nelson**, however, the Texas Supreme Court held that although the MLIIA's absolute two-year statute of limitations may bar a plaintiff, the Open Courts Provision[11] of the Texas Constitution protects a plaintiff "from legislative acts that abridge [her] right to sue before [she] has a reasonable opportunity to discover the wrong and bring suit."[12]  The **Neagle** majority did not address how the MLIIA affected the discovery rule.  Justice Robertson's concurring opinion, however, noted that a future consideration of the court should be "whether the

---

[10]**Id.** § 10.01.

[11]TEX. CONST. art. I, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.").

[12]685 S.W.2d 11, 12 (Tex. 1985).

legislature has abolished the 'discovery rule'" in light of the MLIIA.[13]  Several months after the **Neagle** decision, the Texas Supreme Court unequivocally answered Justice Robertson's query by holding that the Texas Legislature intended to "abolish the discovery rule in cases governed by the Medical Liability Act [article 4590(i)]."[14]

Therefore, the sole question before us is whether the Texas Open Courts Provision saves Hall's medical malpractice claim, though filed over ten years after her surgery.  The Texas discovery rule and the Open Courts Provision have similar policy rationales.  Both operate to save causes of action until litigants have an opportunity to discover their injuries and bring suit.  They differ, however, in that the discovery rule tolls statutes of limitations until discovery, whereas the Open Courts Provision merely gives litigants a reasonable time to discover the nature of their injury and to file suit.[15]  Because tolling does not occur under the Open Courts Provision, courts must determine what constitutes a reasonable time for litigants to discover their injuries and file suit, a task we now address.[16]

---

[13]**Id.** at 13.

[14]**Morrison v. Chan**, 699 S.W.2d 205, 208 (Tex. 1985);  *see also* **Jennings v. Burgess**, 917 S.W.2d 790 (Tex. 1996).

[15]**Fiore v. HCA Health Servs. of Texas, Inc.**, 915 S.W.2d 233 (Tex. App.--Fort Worth 1996, writ denied); **LaGesse v. Primacare, Inc.**, 899 S.W.2d 43 (Tex. App.--Eastland 1995, writ denied); *cf.* **Hawkins v. Safety Cas. Co.**, 207 S.W.2d 370 (Tex. 1948).

[16]We express no opinion on whether and how the reasonableness of any given delay should be submitted to a jury for determination.  As in the present case, this question may be decided as a matter of law when the delay is excessive.  *See, e.g.*, **Fiore**, *supra* (holding that a thirteen month delay in bringing suit was excessive as a

We hold that Hall's conceded fifteen month delay between actual discovery in 1991 and the filing of suit in 1992 is an unreasonable delay under the holdings in **Fiore v. HCA Health Services of Texas, Inc**. and **LaGeese v. Primacare, Inc**. We are mindful that under **Erie Railroad Co. v. Tompkins**,[17] we are obliged to predict how the Texas Supreme Court would treat a fifteen month delay in filing suit. Inasmuch as **Fiore** and **LaGesse** are intermediate appellate decisions and merely carry the notation, "writ denied," they are not teachings by the Texas Supreme Court.[18] They are, however, helpful to our reaching the conclusion that were the Texas Supreme Court to consider this particular delay it would hold that Hall cannot invoke the safe harbor of the Open Courts Provision after waiting fifteen months. The statutory limitations therefore bar all claims which fall under the MLIIA. The summary judgment based thereon was entered properly.

## C. Fraud

Hall also appeals the district court's conclusion that the four-year statute of limitations[19] bars her fraud claim. According to Hall, she did not know until March of 1991 that she had mismatched prostheses and, further, that this was the cause in

matter of law); **LaGesse**, *supra* (holding that a twelve month delay in bringing suit was excessive as a matter of law).

[17]304 U.S. 64 (1938).

[18]"Writ denied" means that the Texas Supreme Court may not have been satisfied that the opinion of the court of appeals declared the law correctly, but was of the opinion that there was no reversible error or no error of law which is of such importance to Texas jurisprudence as to require correction. *See* TEX. R. APP. P. 133.

[19]TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (Vernon 1986).

fact of her discomfort. Hall also claims to have been unaware that one of the implants had been stabilized to the bony structure of her jaw with stiff twisted wires until the implants were actually removed and analyzed in 1992. Hall maintains that her suit is timely because Texas applies a discovery rule to fraud claims.[20] Dr. Reid counters that Hall knew of the mismatched prostheses within days of her surgery and knew that the Proplast-Teflon implant was the probable cause of her pain at least by 1987, when she visited Dr. Hugh Hall in Tennessee.

In her response to Dr. Reid's motion for summary judgment Hall claims that Dr. Reid committed fraud by:

> (1) performing a clinical trial on Hall without advising her that he was going to insert grossly mismatched devices and (2) by implanting the products, defendant Reid represented that the products were intended for that purpose and were safe for that purpose, when he knew or should have known that the devices were not accepted by the medical community or the FDA for that purpose.

As to the "clinical trial" aspect of this allegation, the court notes that in Ms. Hall's First Amended Complaint, she specifically alleges clinical trial and fraud as two separate causes of action under two separate headings. This clinical trial claim, as

---

[20]Whether fraud has a unique "discovery rule," separate and apart from the general discovery rule applied in other contexts, is unclear under Texas law. Technically, fraud and fraudulent concealment causes of action may have deferred accrual dates depending upon the date of discovery of injury. *See* **S.V. v. R.V.**, 933 S.W.2d 1 (Tex 1996) (discussing the potential differences between discovery rules and deferred accrual, but noting that Texas Supreme Court cases have been inconsistent); **Trinity River Auth. v. URS Consultants, Inc.**, 889 S.W.2d 259 (Tex. 1994) (distinguishing between deferred accrual and tolling or suspension of the limitations period). Such a distinction, however, if one exists in Texas, has little or no significance in the resolution of the present case.

noted above, is a health care liability claim within the reach of the MLIIA.[21] It cannot be recast as fraud.

The second charge, that Dr. Reid implanted products he knew or should have known were not appropriate medical devices, is also a health care liability claim. If this claim were allowed under a fraud theory, courts would be hard pressed to ever distinguish between MLIIA and fraud claims. Texas courts have guarded carefully against the erosion of the MLIIA by artful pleading.[22] As a federal court sitting in diversity and applying Texas law we must do likewise. Hall's fraud claim falls within the purview of the MLIIA, and like her negligence, clinical trial, and failure to warn claims, is barred by the MLIIA's two-year statute of limitations. Summary judgment therefore was appropriate.

The judgment appealed is **AFFIRMED**.

---

[21]TEX. REV. CIV. STAT. ANN. art 4590i, § 1.03(a)(4) (defining a health care liability claim as including a claim for "departure from accepted standards of medical care or health care or safety").

[22]*See, e.g.*, **Sorokolit v. Rhodes**, 889 S.W.2d 239, 242 (Tex. 1994) (noting that "[a]lthough the DTPA does not create a cause of action for negligence, plaintiffs at times attempt to bring what might otherwise be negligence claims as DTPA suits." (citations omitted)). "Claims that a physician or health care provider was negligent may not be recast as DTPA actions to avoid the standards set forth in the Medical Liability and Insurance Improvement Act." **Id.**