**Sandy KING, Appellant,**

v.

**Robert E. SULLIVAN, M.D., Appellee.**

No. 01–96–00432–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 12, 1997.

Rehearing Overruled Aug. 13, 1997.

Thomas McQuage, Galveston, for Appellant.

Glenn W. Cunningham, Kirk L. Dobbins, Houston, for Appellee.

Before SCHNEIDER, C.J., and MIRABAL and BASS *, JJ.

## OPINION

MIRABAL, Justice.

This is an appeal from a take-nothing summary judgment in favor of defendant, Dr. Robert E. Sullivan, in a medical malpractice action brought by plaintiff, Sandy King. We reverse and remand.

In her sole point of error, plaintiff asserts the trial court erred in granting defendant's motion for summary judgment.

Plaintiff filed suit against defendants Sullivan and Mainland Center Hospital.[1] In her petition, plaintiff alleged that on or about December 26, 1990, she entered Mainland Center Hospital as a patient to participate in a thirty-day drug rehabilitation program. Upon being admitted, the hospital informed plaintiff that she needed to undergo a number of tests. One of these tests was to determine whether she was HIV positive.

Plaintiff alleged that the first HIV blood test on plaintiff took place on or about December 28, 1990. Defendant learned of the test results on or about January 10, 1991. The initial Elissa screen test results indicated that plaintiff had tested positive for the HIV virus, but the results of the more definitive "Western Blot" test, reported simultaneously, were "indeterminate." The report indicated that the results were not diagnostic of AIDS and that the patient should not be informed of any positive test results by the physician. Despite this warning, defendant advised plaintiff on January 10 that "the blood test had indicated that she had AIDS; that there was no treatment for such condition; and that she should begin to proceed in putting her affairs in order because she was going to die." Plaintiff further alleged that

defendant instructed her that she should begin advising her family of the situation so that they could assist her in taking care of her personal affairs.

According to plaintiff's petition, she made numerous requests for defendant to perform a more definitive and conclusive blood test to determine whether the first test results were accurate. Defendant advised plaintiff such test would be extremely expensive and he did not arrange for such test to be performed. Instead, defendant provided a second blood test of the same type as the first. The second test showed similar results as the first test, and defendant again told plaintiff she was HIV positive and she was going to die.

Plaintiff further alleged that after being released from the hospital, plaintiff had a definitive blood test performed at an independent lab. The results were negative. Thereafter, defendant had a definitive test performed on a blood sample previously taken from plaintiff, and those test results proved negative as well.

Plaintiff additionally alleged in her petition that defendant, without plaintiff's consent, violated the doctor/patient privilege by advising some of plaintiff's family members that she had tested positive for HIV.

Based on defendant's alleged negligence and breach of confidentiality, plaintiff sought recovery for extreme mental anguish and emotional suffering, the harm caused to her relationships with her family members, and the costs of the DNA blood test performed by the independent lab. Plaintiff also sought exemplary damages.

In his answer, defendant asserted, in part, the affirmative defense that plaintiff's cause of action was barred by the statute of limitations under TEX.REV.CIV. STAT. ANN. art. 4590i, § 10.01 (Vernon Supp.1985). The relevant dates are:

---

* The Honorable Sam Bass, retired Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

1. The summary judgment in favor of defendant Sullivan was severed and appealed. This appeal does not involve plaintiff's claims against the hospital.

| | |
|---|---|
| 12/26/90 | Plaintiff enters Mainland Center Hospital |
| 12/28/90 | Blood taken for first HIV blood test |
| 1/05–1/10/91 | First test results reported and plaintiff allegedly told of results |
| 1/19/91 | Blood taken for second HIV blood test |
| 1/31/91 | Plaintiff instructed concerning second test |
| 1/18/93 | Article 4590i notice letter sent to defendant |
| 4/08/93 | Suit filed |

Defendant moved for summary judgment, asserting as a ground that plaintiff's suit was barred by the applicable statute of limitations.[2] Defendant argued that Article 4590i and TEX. CIV. PRAC. & REM.CODE § 16.003 (Vernon 1996) together establish an absolute two–year statute of limitations on medical malpractice cases, plus an additional seventy-five days if a timely notice letter is received by the defendant. Defendant argued that two years and seventy-five days from the supposed act of negligence on January 10, 1991, expired on April, 5, 1993. Because King did not file her petition until April 8, 1993, her suit was barred.

Responding to defendant's motion for summary judgment, plaintiff maintained that the crucial date was not January 10, 1991 as defendant alleged. Instead, she argued that because defendant's conduct derived from a continuing course of treatment, the cause of action accrued on the date of the last treatment—here, the date of the confirming misdiagnosis on January 31, 1991. Therefore, plaintiff's suit was timely filed on April 8, 1993, because the statute of limitations did not run until April 16, 1993.

The trial court, District Judge H.G. Dalehite presiding, partially granted defendant's motion for summary judgment, but only "as to any incidents occurring prior to January 18, 1991." [3]

Defendant filed a motion for reconsideration of Judge Dalehite's summary judgment order. The motion for reconsideration was heard by the successor judge to the 122nd District Court, Judge Carmona. Defendant argued that (1) plaintiff's cause of action accrued on January 10, 1991; (2) the article 4590i letter was sent on January 18, 1993, more than two years after plaintiff's cause of action accrued, and therefore plaintiff could not benefit from the statutory additional 75–day period to file suit; and (3) in any event, suit was filed on April 8, 1993, more than two years and 75 days after the cause of action accrued, resulting in a limitations bar to plaintiff's suit. Judge Carmona agreed and granted defendant summary judgment on all of plaintiff's claims.

Plaintiff then filed a motion for reconsideration of defendant's motion for summary judgment, asking Judge Carmona to "revert to the prior order of this court granting that motion only in part." Plaintiff argued that she was complaining about two negligent acts: one occurring on January 10, 1991, when defendant negligently misinformed plaintiff about HIV infection, and the other occurring on January 31, 1991, when defendant repeated the negligent act of misinforming plaintiff about HIV infection. Plaintiff contended that, even though suit on the first negligent act was barred, suit was timely filed with regard to the second negligent act. Judge Carmona overruled plaintiff's motion for reconsideration.

The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Id.* Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Id.*

Once a movant has established a right to summary judgment, the burden shifts to the nonmovant. *City of Houston v. Clear Creek*

---

**2.** Other grounds for summary judgment were that defendant complied with the applicable standards of care as a matter of law. Plaintiff's response to the motion for summary judgment, supported by an expert's affidavit, clearly raises a fact issue about allegations of negligence and breach of confidentiality. Defendant does not contest this on appeal. The material issue on appeal is the statute of limitations bar issue.

**3.** January 18, 1991, is exactly two years prior to the date of the article 4590i notice letter sent on January 18, 1993.

*Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). The nonmovant must then respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *Id.*

To prevail as a movant for summary judgment, a defendant must either (1) disprove at least one element of plaintiff's theory of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense to rebut the plaintiff's cause of action. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984); *Marchal v. Webb,* 859 S.W.2d 408, 412 (Tex.App.—Houston [1st Dist.] 1993, writ denied). A party moving for summary judgment on the basis of limitations must conclusively establish the bar of limitations. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983); *Marchal,* 859 S.W.2d at 412.

By enacting the Medical Liability and Insurance Improvement Act,[4] the legislature intended to adopt an absolute two-year limitations period. *Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985); *Marchal,* 859 S.W.2d at 412. The applicable statute of limitations is Tex.Rev.Civ. Stat. Ann. Art. 4590i, § 10.01 which provides:

> Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from [1] the occurrence of the breach or tort or [2] from the date the medical or health care treatment that is the subject of the claim is completed or [3] the hospitalization for which the claim is made is completed ...

Proper notice of the claim to the defendant, "shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice." Tex.Rev.Civ. Stat. Ann. art. 4590i, § 4.01.

A plaintiff cannot simply choose among any of these dates. Rather, the Texas Supreme Court clarified when to apply each of section 10.01's three limitations-triggering events in *Kimball v. Brothers,* 741 S.W.2d 370 (Tex.1987). The *Kimball* court

stressed that, when the facts of the situation establish the precise date of the specific breach or tort, the statute dictates that the limitations period runs from the date of that breach or tort. *Id.* at 371.[5] When a "patient's injury occurs during a course of treatment for a particular condition *and the only readily ascertainable date is the last date of treatment,*" the last date a doctor sees a patient, or the date hospitalization terminates, controls the limitations period. *Kimball,* 741 S.W.2d at 372 (emphasis added). In short, when a claimant can ascertain a date of injury, the statute of limitations begins to run on that date.

Defendant argues that plaintiff's injury occurred on an ascertainable date, January 10, 1991. He urges that when plaintiff subsequently received the HIV *negative* results from the independent lab DNA testing, her claims of misdiagnosis, failure to conduct follow-up tests and breach of patient confidentiality arose in connection with the reporting of the *initial* HIV test results on January 10, 1991. According to defendant, the re-reporting of the second HIV test results to plaintiff on January 31, 1991, in a manner identical to the way in which he reported the first results does not effect the ascertainable date of January 10, 1991.

In response, plaintiff charges that defendant engaged in a "continuing course of treatment" based on misdiagnosis. As such, the applicable triggering date would be the date on which the treatment was terminated or "through some date substantially following January 31, 1991 when [defendant] claims to have 'made a special trip to the hospital' to inform [plaintiff] that the [subsequent hospital requested] DNA test had come back negative." Alternatively, plaintiff urges this Court to find that defendant committed separate breaches or misdiagnoses, one on January 10, 1991; another on January 31, 1991; and another when defendant violated the doctor/patient privilege.

Plaintiff relies on *Chambers v. Conaway,* 883 S.W.2d 156 (Tex.1993), to support her

---

**4.** Tex.Rev.Civ. Stat. Ann Art. 4590i (Vernon Supp. 1997).

**5.** The terms "breach or tort" designate the act or omission on which the claim is founded. *See Morrison,* 699 S.W.2d at 208.

contention that defendant's negligence occurred during a continuing course of treatment. However, *Chambers* is not a "continuing course of treatment" case. In *Chambers*, the plaintiff complained to her family physician about a lump in her breast. The physician ordered a mammogram and determined that the lump was benign. Three years later, the plaintiff underwent a second mammogram, from which the physician determined "everything [was] fine." *Id.* at 157. Between the first and second mammograms, and after the second mammogram, the physician treated the plaintiff on numerous occasions for other problems. After the second mammogram, she never again mentioned problems with her breasts. Eventually, she was diagnosed with breast cancer by another doctor. *Id.*

In response to the doctor's summary judgment motion, the plaintiff presented an affidavit from a doctor who stated that, if a patient complains of a lump in her breast, a family physician has a duty to follow-up on this condition during subsequent visits. This evidence tended to establish that the defendant was negligent in each subsequent office visit up to the last office visit, precise dates of breach. Therefore, the plaintiff's suit was timely filed because it was filed within two years of a purported "occurrence of the breach," the *first* element of section 10.01. *Id.* at 158. The supreme court specifically did not base its ruling on the "continuing course of treatment" element of section 10.01. *Id.* at 159.

The supreme court also did not apply the "continuing course of treatment" theory in *Bala v. Maxwell*, 909 S.W.2d 889 (Tex.1995). In *Bala*, family members of the deceased patient brought wrongful death and survival actions against the doctor. *Id.* at 890. In December 1986, doctors hospitalized the patient for anemia. After performing an EGD, Dr. Bala discovered a lesion in the patient's stomach, which a biopsy revealed to be benign. On December 9, 1987, Dr. Bala performed a second EGD and ordered a biopsy of cells from the stomach lesion. The report indicated the lesion to be probably benign, but that malignancy could not "be ruled out with certainty." The report noted that be-

cause tests on additional stains had not been completed, an addendum would follow. *Id.* The addendum reported on December 23, 1987 stated that the cells were consistent with a type of benign tumor. Dr. Bala next saw the patient on May 31, 1989 and scheduled a follow up EGD for July 26, 1989. A biopsy indicated the presence of malignant cells. Later surgery led to the discovery of cancer in decedent's lung and stomach. He died on September 14, 1989, and suit was filed September 30, 1991. The plaintiffs argued that by failing to diagnose the cancer in 1987, and therefore not initiating a course of treatment for cancer, Dr. Bala's negligence continued until the surgery revealed the cancer. *Id.* at 892.

The court disagreed and held that when a physician fails to diagnose a condition, the continuing nature of the diagnosis does not extend the tort for limitations purposes. *Id.* at 892 (citing *Rowntree v. Hunsucker*, 833 S.W.2d 103, 108 (Tex.1992)). The plaintiffs had alleged that Dr. Bala was negligent in 1987 because he had failed to order additional tests after the biopsy report stated malignancy could not be ruled out. The next time Dr. Bala examined the deceased was in 1989, when Dr. Bala ordered the EGD that led to the cancer diagnosis; Dr. Bala was not negligent in 1989. Any negligence could only have occurred in 1987, and the statute of limitations had run by the time plaintiffs filed suit. 909 S.W.2d at 891–92. The court held that when the precise date of the breach or tort is ascertainable, the limitations period begins on that date. *Id.* at 891.

In *Marchal*, this Court held that the plaintiff's cause of action accrued on the dates of either of two radial keratotomy (RK) surgeries, instead of the last date of treatment as plaintiff had alleged. *Marchal*, 859 S.W.2d at 417. On August 21, 1986, the plaintiff first saw the defendant for "problems with her eyes and eyesight" and to see if she was a possible candidate for RK surgery. During that visit, the defendant evaluated her for possible RK surgery. The defendant performed the first surgery on September 5, 1986, when he made 16 cuts in each of the plaintiff's eyes. The plaintiff returned to the defendant on September 10, 1986, December

19, 1986, and March 23, 1987. *Id.* at 410–11. During this time, the plaintiff complained of pain and fluctuating vision at various times during the day. On March 26, 1987, the plaintiff underwent a second RK surgery to correct the first surgery and to further correct her myopia. The plaintiff returned to the defendant for examinations on April 3, 1987, April 23, 1987, July 27, 1987, August 1, 1988, November 11, 1988, December 5, 1988, December 6, 1988, April 21, 1989, and September 11, 1989. During this period, the plaintiff continued to experience pain and fluctuating vision. The plaintiff indicated that prior to the second surgery in March, she suspected the defendant had done something wrong. The plaintiff saw another doctor on April 3, 1989. *Id.* at 411. She filed suit against the defendant on May 5, 1991. The plaintiff did not allege negligence in the post-operative care, but rather she alleged her injuries occurred on the date of either one or both of the two eye surgeries. We held that the statute of limitations began to run from the dates of the eye surgeries (ascertainable dates of injury), not from the date of the plaintiff's last visit to defendant. *Id.* at 417; *see also Casey v. Methodist Hosp.*, 907 S.W.2d 898, 901 (Tex.App.—Houston [1st Dist.] 1995, no writ).

■ In the present case, plaintiff's expert, Dr. Darrell A. Griffin, opined that defendant breached his duty of care (1) when he advised plaintiff of her test results on or about January 10 1991; (2) when he advised plaintiff of her second test results, on or about January 31, 1991; and (3) when he disclosed the results to family members without specific authorization from plaintiff. This evidence is proof of separate, date-certain breaches. Defendant performed HIV tests on two occasions, and he informed plaintiff of the results on two occasions. Similarly, in *Marchal* the doctor performed two RK eye surgeries and the statute of limitations ran from each of the two surgeries. *Marchal,* 859 S.W.2d at 417. Defendant contends that *Marchal* is distinguishable because, unlike defendant's misdiagnosis and handling of the information here,

which was exactly the same each time, the doctor in *Marchal* performed two different surgeries. However, here there were two different blood tests, and two different dates of reporting the results to plaintiff; *Marchal* applies.

Because plaintiff alleged, and presented evidence of, different torts occurring on different dates-certain, the statute of limitations began to run at different times with regard to the different alleged torts. The last alleged breach occurred on January 31, 1991. Therefore, plaintiff's notice letter of January 18, 1993, was timely sent and the deadline for filing suit was extended to April 16, 1993. Accordingly plaintiff's suit, filed April 8, 1993, was not limitations-barred.

The trial court erred when it granted defendant a complete summary judgment. However, as to claims that arose prior to January 18, 1991 (being two years prior to the art. 4590i notice given January 18, 1993), plaintiff's claims are barred.[6] Judge Dalehite's *partial* summary judgment was correct.

Accordingly, we reverse the trial court's final judgment and remand the case to the trial court for further proceedings in accordance with this opinion.

---

6. In order to toll the running of the statute of limitations for 75 days, notice of the claim must be given before expiration of the two-year limitation period. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 4.01(c) (Vernon Supp.1997).