**Debra Murphy GAGNIER, Appellant,**

v.

**Harlan WICHELHAUS, M.D. and MacGregor Medical Association, P.A., Appellees.**

No. 01–99–00724–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 30, 2000.

Rehearing Overruled May 26, 2000.

Sharon S. McCally, Houston, for appellant.

John B. Wallace, Houston, for appellees.

Panel consists of Justices O'CONNOR, NUCHIA, and DUGGAN.*

## OPINION

SAM NUCHIA, Justice.

This is a medical malpractice case where plaintiff, Debra Murphy Gagnier, sued defendants, Harlan Wichelhaus and MacGregor Medical Association, for not discovering she had an IUD (intra-uterine device) in her uterus during treatment for infertility. The trial court granted summary judgment in favor of defendants. We reverse and remand.

## BACKGROUND

Plaintiff began using an IUD for birth control before 1974. She underwent an abortion in 1974, and her doctor told her the IUD was no longer in her uterus. In 1994, plaintiff and her husband began trying to conceive. After eight months of trying to conceive with no success, plaintiff consulted Dr. Wichelhaus. Plaintiff informed Dr. Wichelhaus of her medical history at their first appointment.

Wichelhaus told plaintiff she had low progesterone and prescribed Clomid. This was unsuccessful, and he recommended a laparoscopy and hysteroscopy "to make sure [her] uterine cavity was clean and adaptable to conceiving." On February 23, 1995, Wichelhaus performed both procedures. On February 28, 1995, Wichelhaus told plaintiff he had discovered and removed endometrial tissue and some scar tissue. Wichelhaus did not report any foreign bodies within her uterus. He suggested that plaintiff try natural cycles for a while to see if she could get pregnant.

In October of 1995, after several natural cycles, plaintiff was still not pregnant. She called to schedule an appointment with Wichelhaus, but was referred to Dr. McWilliams because Wichelhaus was no longer practicing in the area of fertility. McWilliams recommended aggressive fertility treatment. Plaintiff chose not to undergo the aggressive treatment at that time because she was having to commute between New York and Houston for her job.

In March of 1997, plaintiff returned to Wichelhaus for a gynecological examination. Wichelhaus told plaintiff her exam was normal, and he referred her back to

---

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

McWilliams for further fertility treatment.[1]

Before starting the aggressive fertility treatment, McWilliams did an ultrasound and found plaintiff had scar tissue in her uterus. On May 9, 1997, McWilliams performed another hysteroscopy and found plaintiff still had the IUD in her uterus.

On June 23, 1997, plaintiff hired an attorney. On July 7, 1997, plaintiff's attorney, Bill Robins sent 4590i notice letters to defendants demanding plaintiff's medical records.[2] On August 29, 1997, after no response, Robins again requested the medical records. Robins received some of the records 10 days later. MacGregor acknowledged the request, but said prepayment was required before it could release the records. Robins sent payment for the records within three weeks. On January 20, 1998, Robins requested the additional medical records a third time. Three days later, MacGregor gave Robins some of plaintiff's records.[3] Plaintiff filed suit on March 24, 1998.

### Standard of Review

■ Summary judgment is proper only when the movant shows that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); Tex.R. Civ. P. 166a(c). For a defendant to prevail on a motion for summary judgment, it must either: (1) disprove at least one element of the plaintiff's cause of action; or (2) plead and conclusively establish each essential element of an affirmative defense to the plaintiff's cause of action. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984); *Rubalcaba v. Kaestner*, 981 S.W.2d 369, 371 (Tex.App.—Hous. [1st Dist.] 1998, pet. denied). A party moving for summary judgment on the basis of limitations must conclusively establish the

bar of limitations. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983); *Casey v. Methodist Hosp.*, 907 S.W.2d 898, 900 (Tex.App.—Houston [1st Dist.] 1995, no writ).

■ Once a movant has produced competent evidence to establish a right to summary judgment, the burden shifts to the nonmovant to introduce evidence to raise an issue of fact that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); *Rubalcaba*, 981 S.W.2d at 371. In deciding whether there is a disputed issue of material fact, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 548–49. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Id.*

### ANALYSIS

In issue one, plaintiff argues 4590i is unconstitutional as applied to her because she could not have reasonably discovered her injury within the limitations period. Defendants contend that because plaintiff's pleadings and summary judgment evidence establish the date of alleged malpractice is February 23, 1995, the date Wichelhaus performed the hysteroscopy and did not find or remove the IUD, plaintiff had to file suit on or before February 23, 1997.

### Statute of Limitations

■ The Medical Liability and Insurance Improvement Act has an absolute two-year limitations period and abolishes the discovery rule for medical malpractice claims. *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex.1985); *Marchal v. Webb*, 859 S.W.2d 408, 412 (Tex.App.—Houston [1st Dist.] 1993, writ denied). Article 4590i, section 10.01, in pertinent part provides three limitations-triggering events:

---

1. Plaintiff does not assert that defendants were negligent on this date.

2. Tex.Rev.Civ. Stat. Ann. Art. 4590i, § 10.01 (Vernon Supp.1999).

3. MacGregor lost some of the records.

Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed.

TEX.REV.CIV. STAT. ANN. art. 4590i, § 10.01 (Vernon Pamph.2000).

■ Although article 4590i specifies three dates from which the limitations period may run, a plaintiff cannot simply choose among any of these dates. *Bala v. Maxwell,* 909 S.W.2d 889, 891 (Tex.1995); *King v. Sullivan,* 961 S.W.2d 287, 290 (Tex.App.—Houston [1st Dist.] 1997, writ denied). When the precise date of breach or tort is ascertainable, the limitations period begins on that date. *Id.* (holding when a medical malpractice plaintiff can ascertain a date of injury, two-year statute of limitations begins to run on that date).

The undisputed summary judgment proof established the following dates as applicable for limitations purposes:

1974 Plaintiff's doctor told her that she no longer had an IUD.

September, 1994 Plaintiff went to Dr. Wichelhaus for fertility treatment.

February 23, 1995 Dr. Wichelhaus performed a laparoscopy and hysteroscopy on plaintiff.

February 28, 1995 Plaintiff went for a follow up visit to Dr. Wichelhaus who told her he found some scar tissue and mild endometriosis, which he removed.

October 1995 Plaintiff called MacGregor to schedule another appointment with Wichelhaus, but she was told he was no longer practicing fertility treatment. She was referred to Dr. McWilliams.

October 24, 1995 Dr. McWilliams suggested plaintiff undergo aggressive fertility treatment. Plaintiff chose not to do so because she needed to "finish up her job" before starting aggressive fertility treatment.

May 9, 1997 Dr. McWilliams performed surgery on plaintiff and found the IUD in her uterus.

July 7, 1997 Robins sent statutory notice letters to Wichelhaus and MacGregor requesting medical records.

March 24, 1998 Plaintiff filed suit.

In deposition excerpts, pleadings and summary judgment responses, plaintiff asserted Dr. Wichelhaus was negligent only on February 23, 1995. Because plaintiff has made no claim of negligence after February 23, 1995, limitations on her cause of action began to run on that date. *See Kimball v. Brothers,* 741 S.W.2d at 370, 372 (Tex.1987); *Casey,* 907 S.W.2d at 901. Accordingly, limitations had run when plaintiff filed suit on March 24, 1998.

### Defense to Limitations—Open Courts Challenge

■ Plaintiff makes an open courts challenge to the constitutionality of 4590i section 10.01 as applied to her. She argues 4590i cut off her common law cause of action before she *knew or should have known* the nature of the injury or the facts giving rise to the cause of action. Defendants concede that plaintiff did not know of her injury until April of 1997. However, they contend (1) plaintiff's condition was not latent; therefore, she had an opportunity to learn of the negligence and sue within the limitations period, and (2) plaintiff *could* have discovered the wrong *if* she had chosen to begin the aggressive fertility treatment in 1995.

■ The Texas Constitution provides, "All courts shall be open, and every person for an injury done him, and his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. This "open courts" provision is premised upon the rationale that the legislature has no power to make a remedy by due course of law contingent upon an impossible condition. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 355 (Tex.1990).

To establish an open courts violation, plaintiff must satisfy a two-part test: (1) she must show she has a well-recognized common-law cause of action that is being restricted; and (2) she must show the restriction is unreasonable or arbitrary when balanced against the purpose of the statute. *Id.; University of Texas Medical Branch at Galveston v. Greenhouse*, 889 S.W.2d 427, 430 (Tex.App.—Houston [1st Dist.] 1994, writ denied).

The constitutionality of article 4590i has been upheld as long as the statute does not cut off the cause of action before the plaintiff has a reasonable opportunity to discover the wrong and bring suit within the two-year period. *Morrison*, 699 S.W.2d at 207. However, when it is not possible for the plaintiff to discover the injury or wrong within the two-year period, the absolute two-year limitation has been held to be unconstitutional. *DeLuna v. Rizkallah*, 754 S.W.2d 366, 368 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

Defendants concede plaintiff is asserting a recognized common law cause of action and meets the first condition of the open courts defense. Defendants contend plaintiff cannot meet the second prong of the open courts defense because her claim is not being unreasonably or arbitrarily cut off.

To support their claim that plaintiff *could* have discovered the wrong within the limitations period, defendants argue plaintiff had the opportunity to discover the wrong in 1995 when Dr. McWilliams suggested she begin aggressive fertility treatment. Specifically, defendants argue that because McWilliams performed surgery and found the IUD in 1997, if plaintiff had decided to begin the aggressive fertility treatment in 1995, McWilliams would have performed the same treatment; therefore, plaintiff would have discovered the wrong in 1995 if she had chosen to begin the aggressive fertility treatment.

In *Melendez v. Beal*, this Court held the two-year statute of limitations should not be used when "the results would be unrea-sonable, absurd, and unjust." *Melendez v. Beal*, 683 S.W.2d 869, 873 (Tex.App.— Houston [1st Dist.] 1984, no writ). In *Melendez*, we held that it would be unfair for the limitations period to begin running in 1968, the date on which the original surgery was performed that resulted in a sponge being left in appellant's abdomen. *Id.* To require Melendez to bring suit within two years of the surgery would mean patients would have to have x-rays and tests done within two years of any surgery to be sure their doctor had not been negligent. *Id.* Similarly, to hold plaintiff could have discovered defendants' alleged negligence if she had chosen to begin the aggressive fertility treatment in 1995 would essentially be requiring her to endure aggressive fertility treatment within two years of her surgery to discover whether defendants had been negligent.

Defendants also argue that because plaintiff knew about the underlying condition—inability to get pregnant—and did not follow up, she could have discovered the alleged negligence within the limitations period. To support their contention, defendants rely on *Earle v. Ratliff* where the record established that, for two years after surgery, Ratliff repeatedly complained of pain and lack of improvement in his back. 998 S.W.2d 882, 889 (Tex.1999). The only evidence Ratliff offered to show he could not have learned of the risks sooner consisted of statements in an affidavit that he was justified in trusting Dr. Earle. Because Ratliff's condition was not latent, the court held he had an opportunity to learn of Dr. Earle's negligence and sue within the limitations period. *Id.* at 890.

This case is distinguishable from *Earle*. While plaintiff did know of her underlying condition, *i.e.*, her inability to get pregnant, the issue is whether she had a reasonable opportunity to discover that the cause of her infertility was Dr. Wichelhaus's alleged negligence. Here, plaintiff offered evidence to show she could not

have learned of her injury sooner. Plaintiff's summary judgment evidence established that Wichelhaus told her that her uterus would be "clean and adaptable to conceiving" after the hysteroscopy, her uterus looked "great" after the surgery, and that she had previously been diagnosed with low progesterone. Although plaintiff's infertility may have been evident during the limitations period, her infertility during that time could have been discounted as a result of her low progesterone. *See Nelson v. Krusen*, 678 S.W.2d 918, 920–23 (Tex.1984) (holding plaintiff's cause of action was not barred by the statute of limitations when clumsiness, a symptom of Duchenne muscular dystrophy, may have been evident during the first two years of the child's life, but clumsiness could also have been discounted as the result of a two-year old learning to walk). We find that 4590i section 10.01 is unconstitutional as applied to plaintiff because she did not have a reasonable opportunity to discover the injury and bring suit within the statute of limitations.

We sustain issue one.

When the open courts challenge preserves a plaintiff's claim for an exception to the two-year statute of limitations, the claimant has a "reasonable time" to investigate, prepare and file suit after discovering her injury. *Neagle v. Nelson*, 685 S.W.2d 11, 14 (Tex.1985) (J. Kilgarin concurring); *LaGesse v. PrimaCare, Inc.*, 899 S.W.2d 43, 47 (Tex.App.—Eastland 1995, writ denied); *Fiore v. HCA Health Servs. of Texas, Inc.*, 915 S.W.2d 233, 237 (Tex. App.—Fort Worth 1996, writ denied). Reasonableness is a question of fact unless the evidence, "construed most favorably for the claimant, admits no other conclusion." *Neagle*, 685 S.W.2d at 14 (J. Kilgarin concurring); *DeRuy v. Garza*, 995 S.W.2d 748, 752–53 (Tex.App.—San Antonio 1999, pet. filed).

In health care liability claims, there is no clear authority as to what is a "reasonable time" within which to file suit after discovering an injury outside the statute of limitations. *See Hall v. Dow Corning Corp.*, 114 F.3d 73, 77 (5th Cir.1997) (applying Texas law to find 15 month delay in bringing suit unreasonable under open courts provision); *Fiore*, 915 S.W.2d at 238 (finding 13 month delay unreasonable); *LaGesse*, 899 S.W.2d at 47 (holding that plaintiff's claims were barred when brought two weeks shy of one year after discovering injury); *but see Bradford v. Sullivan*, 683 S.W.2d 697, 697 (Tex.1985) (reversing and remanding summary judgment when plaintiff filed suit 11 months after discovering injury); *DeRuy*, 995 S.W.2d at 753 (holding reasonableness of 11-month delay in filing suit was a fact question); *Melendez*, 683 S.W.2d at 872 (holding that filing of suit 15 months after discovering wrong was not unreasonable when patient underwent procedure giving rise to complaint 13 years prior).

Defendants argue that 10 months was not a reasonable time to delay the filing of the law suit as a matter of law. Plaintiff argues the 10 month delay is reasonable because (1) seven months of the 10-month delay was due to defendants' refusal to provide her with her medical records so that she could investigate her claims, and (2) she spent 90 days recovering from surgery, consulting an attorney, conducting an investigation into the merits of her claim, and filing suit. Plaintiff concedes that defendants' refusal to provide medical records does not toll the statute of limitations; however, plaintiff argues defendants' seven-month delay in providing her with records should be considered along with other circumstances when determining whether her 10-month delay in filing suit was reasonable.

We agree that defendants' delay in providing medical records, the time for recovery, consultation with an attorney and investigation should be considered when determining whether plaintiff's delay in filing suit was reasonable. *See DeRuy*, 995 S.W.2d at 753 (holding the reasonableness of plaintiff's delay in filing suit was an

issue upon which reasonable minds could differ where plaintiff was recuperating from surgery for three months, went to see an attorney six months later, and suit was filed on her behalf three months after consulting with an attorney).

We find that the reasonableness of this delay is a question of fact precluding summary judgment.

We sustain issue two.

We reverse and remand.