NUMBER 13-01-841-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

___________________________________________________________________


MARY ANN BARNES PECH , Appellant,



v.




THE ESTATE OF VICENTE TAVAREZ, JR., DECEASED , Appellee.

___________________________________________________________________


On appeal from the 92nd District Court

of Hidalgo County, Texas.

__________________________________________________________________



O P I N I O N


Before Chief Justice Valdez and Justices Rodriguez and Amidei (1)

Opinion by Justice Rodriguez


 This is a medical malpractice action. Appellant, Mary Ann Barnes Peach, sued appellee, the Estate of Dr. Vicente
Tavarez, Jr., deceased (the Estate), for malpractice arising from a surgery performed by Dr. Tavarez. The Estate moved for
traditional summary judgment asserting Pech was barred by limitations under the two-year statute on medical malpractice
actions, and, alternately, under the open courts doctrine. The trial court granted the Estate's motion and dismissed the case. 
By three points, Pech contends the trial court erred in dismissing the suit in its entirety because: (1) issues of material fact
remain regarding the Estate's limitations defense; (2) Joan Tavarez, as executrix or personal representative of the Estate,
was not a moving party for summary judgment; and (3) the judgment was based on abandoned claims. We affirm.

I. Background

 In April 1996, a mammogram revealed a lump in Pech's left breast. Pech was referred to Dr. Tavarez, a surgeon. A
sonogram, ordered by Dr. Tavarez, confirmed the results of the mammogram. Prior to surgery, Pech was under the
impression that Dr. Tavarez would do a non-radical biopsy, that the pathologist would examine the tissue, and that Dr.
Tavarez would do semi-radical surgery only if the tissue were cancerous. Dr. Tavarez performed the surgery on May 20,
1996. When the bandages were removed during a follow-up visit on May 24, 1996, Pech was "shocked and horrified by
the radical nature of the surgery." During the May 24 visit, Dr. Tavarez informed Pech he had removed the lump and it was
benign. After several follow-up visits to Dr. Tavarez's office, Pech did not see the doctor again. Dr. Tavarez died
thereafter.

 On November 3, 1998, approximately two and one-half years after the surgery, Pech had a routine mammogram that was
ordered by Dr. Andrew de la Garza. This mammogram again revealed a lump in her left breast. The lump was the same
size and in approximately the same location as the lump Dr. Tavarez had reportedly removed in May 1996. Pech assumed
that the lump was a new one. Pech testified at her deposition that some time before December 30, 1998, Dr. de la Garza
told her it was the same lump. On April 23, 1999, Dr. Ramesh G. Shah biopsied the lump using a non-radical needle
biopsy method, and on April 27, 1999, Dr. Shah informed Pech that the biopsied lump was not a new lump. It was Dr.
Shah's opinion that it was not necessary to remove the biopsied lump because it was determined to be benign.

 Because of personal matters, including her own health concerns and those of family and friends as well as the death of her
father and the care of her mother, Pech did not begin inquiring into legal services until late October 1999. Pech filed suit
alleging negligence against the Estate on March 13, 2000. On April 19, 2000, Pech amended her petition identifying the
Estate and Joan Tavarez, executrix, or alternately, personal representative of the Estate, as defendants.

 On June 22, 2001, the Estate filed its amended motion for summary judgment asserting a limitations defense based on (1)
an absolute bar because Pech learned of her injury and the alleged malpractice within the two year limitations period, and
(2) alternately, the open courts doctrine because Pech did not use diligence in filing her lawsuit. Pech filed her second
amended petition on July 13, 2001, noting that "Mrs. Tavarez and the Estate have already made their general appearance in
the case." In this amended petition, Pech alleged Dr. Tavarez was negligent in the following respects:

 


 In failing to remove the lump from her left breast in 1996;




 


 In failing to disclose to her the fact that he had not removed the lump even after performing the surgery; and


 

 


 In telling her the lump was removed and was benign.


 

Absent from this amended petition was Pech's claim that Dr. Tavarez was negligent in performing a more radical surgical
procedure than was required.

 On August 24, 2001, the trial court granted the Estate's motion for summary judgment on the limitations defense and
dismissed the entire case with prejudice. This appeal ensued.

II. Standard of Review

 We must determine whether the summary judgment proof establishes as a matter of law that there is no genuine issue of
material fact as to one or more of the essential elements of the plaintiff's cause of action or whether the defendant has
conclusively established all elements of his affirmative defense. Velsicol Chem. Corp. v. Winograd, 956 S.W.2d 529, 530
(Tex. 1997); Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996); Crain v. Smith, 22 S.W.3d 58, 59 (Tex. App.-Corpus
Christi 2000, no pet.); see City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). When reviewing
a summary judgment, we take as true all evidence favorable to the non-movant and indulge every reasonable inference in
the non-movant's favor. See Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1996); Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 549 (Tex. 1985). The propriety of a summary judgment is a question of law; therefore, we review the trial
court's granting of a motion for summary judgment de novo. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994);
Tex. Commerce Bank Rio Grande Valley v. Correa, 28 S.W.3d 723, 726 (Tex. App.-Corpus Christi 2000, pet. denied).

III. Limitations Defense

 By her first issue, Peach claims the trial court erred in issuing summary judgment against her on the basis of the Estate's
limitations defense. 





A. The Law

 The discovery rule, which tolls the beginning of the statute of limitations in tort cases until the plaintiff has learned or
should have learned of the incident that gave rise to his claim, does not apply under article 4590i of the Medical Liability
Insurance Improvement Act. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 10.01 (Vernon Supp 2003) (absolute bar); Jennings v.
Burgess, 917 S.W.2d 790, 794 (Tex. 1995). Therefore, because the present suit was filed almost four years after the
surgery at issue in this case, this suit would be time-barred based on the two year statute of limitations. However, under the
Texas Constitution's open courts provision, article 4590i may not operate as a complete bar to a claim that is otherwise
assertable under common law. Tex. Const. art I, § 13 (persons bringing common-law claims will not unreasonably or
arbitrarily be denied access to courts); see Shah v. Moss, 67 S.W.3d 836, 842 (Tex. 2001) (citing Neagle v. Nelson, 685
S.W.2d 11, 12 (Tex. 1985)). 

 A prima facie case under the open courts provision may be successfully established upon a showing that the litigant has a
cognizable common-law cause of action, and the restriction of the claim is unreasonable or arbitrary when balanced against
the statute's purpose. Shah, 67 S.W.3d at 842; Diaz v. Westphal, 941 S.W.2d 96, 100 (Tex. 1997). Once a plaintiff
establishes a prima facie violation, she must show she used due diligence in bringing the suit within a reasonable time after
learning about the alleged wrong. Shah, 67 S.W.3d at 847; Nelson v. Krusen, 678 S.W.2d 918, 921-22 (Tex. 1984);
DeRuy v. Garza, 995 S.W.2d 748, 752 (Tex. App.-San Antonio 1999, no pet.). The reasonable time is given in order to
allow a claimant to investigate, prepare and file suit after discovering her injury. Gagnier v. Harlan Wichelhaus, M.D., 17
S.W.3d 739, 745 (Tex. App.-Houston [1st Dist.] 2000, pet. denied); see DeRuy, 995 S.W.2d at 752.

 "In health care liability claims, there is no clear authority as to what is a 'reasonable time' within which to file suit after
discovering an injury outside the statute of limitations." Gagnier , 17 S.W.3d at 745. Whether a plaintiff has used the
degree of diligence required is ordinarily a question of fact to be determined by the trier of fact; however, it may be
"determined as a matter of law when the evidence, construed most favorably for the claimant, admits no other conclusion." 
DeRuy, 995 S.W.2d at 752-53 (quoting Neagle, 685 S.W.2d at 14 (Kilgarlin, J., concurring)). Compare Gagnier, 17
S.W.3d at 745 (holding ten months not per se unreasonable when defendants delayed in providing plaintiff with medical
records, and plaintiff was recovering, consulting with an attorney, and investigating her claim), and DeRuy, 995 S.W.2d at
753 (Tex. App.-San Antonio 1999, no pet.) (holding slightly less than one year not per se unreasonable when plaintiff was
recuperating for three months, consulted an attorney six months later, and filed suit three months later), with Shah, 67
S.W.3d at 847 (holding seventeen month delay was unreasonable as a matter of law when plaintiff offered no legitimate
explanation accounting for delay), and Voegtlin v. Perryman, 977 S.W.2d 806, 813 (Tex. App.-Fort Worth 1998, no pet.)
(delay of more than one year unreasonable when plaintiff offered no explanation for delay), and Fiore v. HCA Health
Servs. of Tex., Inc., 915 S.W.2d 233, 237 (Tex. App.-Forth Worth 1996, writ denied) (thirteen month delay in bringing suit
excessive as matter of law when plaintiff offered no explanation for delay), and LaGesse v. PrimaCare, Inc., 899 S.W.2d
43, 47 (Tex. App.-Eastland 1995, writ denied) (holding twelve month delay excessive as a matter of law where only
reasons given were attorney delay), and Work v. DuvalI, 809 S.W.2d 351, 353-354 (Tex. App.-Houston [14th Dist.] 1991,
no writ) (injury discovered four months prior to expiration of two-year limitations period irrelevant because plaintiff
unreasonably delayed in filing suit for twenty-one months following discovery of injury).

 The Estate urges that it is entitled to summary judgment even if Pech established a prima facie open courts violation
because Pech, as a matter of law, did not bring her lawsuit within a reasonable time after she learned of the potential claim,
and, therefore, is not entitled to relief from the open courts provision. We agree.

B. Pech Learned of Potential Claim

 Pech's surgery was performed on May 20, 1996. Pech contends she did not discover the alleged injury until sometime
between April 9, 1999 and April 23, 1999, almost three years after the surgery, when she was told that the lump was the
same lump that Dr. Tavarez had reportedly removed in 1996. However, from our de novo review of the summary judgment
evidence, we conclude the evidence establishes that discovery occurred no later than December 30, 1998.

 The summary judgment evidence provides that in November 1998 Pech had a routine mammogram while under the care of
Dr. de la Garza. The radiologist reported that, as compared with the April 12, 1996 mammogram, the November 1998
mammogram showed no change in size and appearance of the lump in the left breast. Sometime between the November
1998 mammogram and December 30, 1998, when Pech saw Dr. Rodriguez-Aguero for a follow-up sonogram, she talked
with Dr. de la Garza. During the telephone conversation he informed her that the lump was the same lump. Pech testified
at her deposition that when Dr. de la Garza first told her, she "almost lost it," "[i]t had been there for two years," and she
was shocked and angry at Dr. Tavarez because he had left the lump. The evidence also establishes that in March 23, 1999,
Pech discussed the possibility of this being the same lump with Dr. Hunter, and, in early April 1999, Pech ordered copies of
her medical records from the Tavarez Clinic.

 Based on the above, taking as true all evidence favorable to Pech and indulging every reasonable inference in Pech's favor,
see Cathey, 900 S.W.2d at 341; Nixon, 690 S.W.2d at 549, we conclude, as a matter of law, that discovery occurred no later
than December 30, 1998. Pech's claim in response to the motion for summary judgment that she did not discover the
purported wrongful conduct until sometime between April 9, 1999 and April 23, 1999 when a physician informed her that
the lump was the same lump that Dr. Tavarez was to have removed in 1996, is not supported by the summary judgment
evidence.

C. Due Diligence in Filing Lawsuit

 Based on a discovery date of December 30, 1998, and a filing date of March 13, 2000, Pech waited fourteen months after
discovery to file her lawsuit. She asserts that her delay was reasonable. We disagree.

 While we sympathize with Pech about her personal and family concerns, we conclude that, as a matter of law, Pech did not
file her suit against the Estate within a reasonable period of time. A reasonable delay is allowed for investigation,
preparation and filing the claim after the injury is discovered. Gagnier, 17 S.W.3d at 745; see DeRuy, 995 S.W.2d at 752. 
The fourteen month delay was not for that purpose. During that interval Pech helped with family matters, a friend's health
concerns, and personal health problems. After discovery, Pech briefly cared for her parents. Her father died a few months
later, and Pech attended to the preparation of various services for him in Texas and in his home state of Minnesota. During
this fourteen month delay, Pech also experienced health problems of her own unrelated to the surgery at issue, including a
broken arm and sprained ankle that occurred while playing tennis. Pech also asserts the delay was reasonable because of
health concerns of other family members and a friend.

 We cannot conclude ordinary life experiences can be argued as legitimate bases for delaying the filing of a lawsuit. 
Moreover, Pech spent the summer months at her home in Minnesota, waiting until she returned to her winter home in
Texas, nine months after discovery, before seeking the assistance of an attorney. Pech does not complain that any part of
the delay was because she was recovering from the surgery at issue. See Gagnier, 17 S.W.3d at 745; DeRuy, 995 S.W.2d at
753. Also, her medical records were provided to her immediately upon request. See Gagnier, 17 S.W.3d at 745.

 Pech knew about her alleged injury on December 30, 1998, fourteen months before she brought suit on March 13, 2000. 
She offered no valid explanation for the delay; the unreasonableness of the delay admits no other conclusion. See DeRuy,
995 S.W.2d at 752-53. Pech failed to use due diligence when she delayed fourteen months after she learned the lump had
not been removed to file her claim. Therefore, even taking as true Pech's assertion that she could not have sued within the
two-year limitations period, the open courts provision does not save her claim. Accordingly, we overrule appellant's first
issue. (2)

IV. Summary Judgment Valid as to Personal Representative

 Pech contends by her second point of error that the trial court erred in dismissing this case in its entirety because Joan
Tavarez, as executrix or personal representative of the Estate was not a moving party for the summary judgment. An estate
of a decedent is not a legal entity and may not sue or be sued as such. Price v. Estate of Anderson, 522 S.W.2d 690,
691(Tex. 1975). However, if the estate's personal representative participates in the case, the judgment involving the estate
may be valid. See Embrey v. Royal Ins. Co. Of Am., 22 S.W.3d 414, 415 n.2 (Tex. 2000) (citing Bernstein v. Portland Sav.
& Loan Ass'n, 850 S.W.2d 694, 699 (Tex. App.-Corpus Christi 1993, writ denied) (disapproved on other grounds by
Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 388-89 (Tex. 2000)). In this case, Pech filed suit against both the Estate
and Joan Tavarez, its executrix or personal representative. Mrs. Tavarez and the Estate made general appearances in this
case. It is undisputed that Mrs. Tavarez, the personal representative of the Estate, participated in the case. Thus, we
conclude that, although the motion for summary judgment identified the Estate as the movant, the summary judgment is
valid as to the personal representative, Mrs. Tavarez. (3) Pech's second point is overruled.

V. Fraud Claim Not Raised

 Finally, by her third point of error, Pech contends that the trial court erroneously failed to consider her second amended
original petition in rendering its decision. In her briefing, Pech describes one of Dr. Tavarez's acts as negligence or fraud. 
However, we have reviewed Pech's second amended petition and find no mention of fraud or the elements of fraud in the
petition. Her factual recitation is expanded in her amended petition; however, the facts support her claim for negligence, a
cause of action mentioned repeatedly throughout the document. The Estate's motion for summary judgment addressed
Pech's negligence claim. See Tex. R. Civ. P. 166a(c) (motion shall state specific grounds therefor). Accordingly, we
overrule Pech's third point of error.

VI. Conclusion

 The judgment of the trial court is affirmed. 

 

NELDA V. RODRIGUEZ

Justice



Opinion delivered and filed

this 31st day of July, 2003.

 

1. Former Justice Maurice Amidei assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to
Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

2. We also overrule the third point of error to the extent Pech contends she did not discover the alleged claims until more
than two years after surgery and treatment, thus, her claim should not be barred.

3. We note Pech did not sue Mrs. Tavarez in her individual capacity and did not assert claims against her individually;
allegations of malpractice were asserted only against Dr. Tavarez.