NUMBER 13-02-574-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
                                                                                                                      
 
JOHN COCO, 
Appellant,

v.

THE PORT OF CORPUS 
CHRISTI AUTHORITY,                                                                                                                                                                              Appellee.
                                                                                                                                      

On appeal from the 319th District Court of Nueces County, Texas.
                                                                                                                      

O P I N I O N

Before Chief Justice Valdez and Justices Rodriguez and Garza
Opinion by Justice Garza

          Appellant, John Coco, challenges a final summary judgment in favor of appellee,
the Port of Corpus Christi Authority, on Coco’s two claims against the Port. In this case,
we decide whether issues of material fact exist on an affirmative defense based on the
borrowed servant doctrine where a contract designates control of an employee to a special
employer but fact issues are raised as to whether the employee nevertheless remained
under the actual control of the general employer. Because we conclude that under such
circumstances a contractual designation of control is just one factor to be considered,
summary judgment was improper in this case. We reverse the trial court’s judgment and
remand for further proceedings.
A. Facts 
          The following facts are not in dispute. John Coco is a longshoreman. On February
24, 2000, he fell from a gantry crane and was injured while working for Dix Stevedores at
a wharfage facility owned by the Port. The accident occurred when the crane on which
Coco was standing collided with a front-end loader. At the time, the crane was owned by
the Port and operated by Joe Hinojosa, an employee of the Port. Coco sued the Port on
theories of common law negligence and premises liability. The Port moved for summary
judgment based on the borrowed servant doctrine. The trial court ruled for the Port on both
claims, and this appeal ensued. 
B. Standard of Review
          When a trial court’s order granting summary judgment is silent as to the reasoning
upon which the ruling is based, as in this case, the appellate court should affirm the
summary judgment if any ground advanced in the motion is meritorious. Harwell v. State
Farm Mut. Auto Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995); Larson v. Family Violence &
Sexual Assault Prevention Ctr., 64 S.W.3d 506, 515 n.8 (Tex. App.–Corpus Christi 2001,
pet. denied). In reviewing an award of traditional summary judgment, we must determine
whether the summary judgment proof establishes as a matter of law that there is no
genuine issue of material fact as to one or more of the essential elements of the plaintiff’s
cause of action or whether the defendant has conclusively established all elements of his
affirmative defense. Pech v. Estate of Tavarez, 112 S.W.3d 282, 285 (Tex. App.–Corpus
Christi 2003, no pet.); see also Crain v. Smith, 22 S.W.3d 58, 59 (Tex. App.–Corpus Christi
2000, no pet.). We take as true all evidence favorable to the non-movant and indulge
every reasonable inference in the non-movant’s favor. Trigo v. Munoz, 993 S.W.2d 419,
421 (Tex. App.–Corpus Christi 1999, pet. denied). Our review is de novo. Texas
Commerce Bank-Rio Grande, N.A. v. Correa, 28 S.W.3d 723, 726 (Tex. App.–Corpus
Christi 2000, pet. denied). C. Analysis
1. Liability for Negligence based on Respondeat Superior 
          The borrowed servant doctrine is an affirmative defense to tort liability based on
respondeat superior. In its motion for summary judgment, the Port argued that the crane’s
operator, Joe Hinojosa, was a borrowed servant of Dix Stevedores and that the Port,
therefore, could not be liable for his torts. As evidence, the Port submitted the Bulk
Terminal Tariff 1-A. By its terms, the Tariff governs the relationships between the Port and
all Users. “Users” is defined by the Tariff to include all vessels, their owners, agents,
stevedores, contractors, and any other party. The Tariff also purports to govern the
obligations and rights of Users with respect to the Equipment associated with the Bulk
Terminal. “Equipment” specifically includes the gantry crane. Under the terms of the
Tariff, “acceptance of possession and/or use of the Traveling Gantry Crane . . . by User
shall constitute acknowledgment of the existence of an agreement between User and . .
. [the Port] binding both parties to all terms and conditions herein.” The Tariff also states,
“It is understood and agreed that Equipment will be operated under the direction and
control of the User and that the User shall be responsible for the operation thereof . . . .” 
According to the Port, these contract provisions gave control of Hinojosa to Dix Stevedoes,
and thus, under the borrowed servant doctrine, only Dix Stevedores can be held liable for
torts committed in the course of his employment. 
          In response, Coco argued that summary judgment was improper because fact
issues existed as to which party had control of Hinojosa. Coco contended that the Tariff’s
division of control was not dispositive. He argued that Hinojosa remained the Port’s
employee despite the Tariff because the Port had actual control based on the following
factors: (1) the crane is owned by the Port and operated by Port employees; (2) the Port’s
general superintendent oversees crane operators to ensure safe operation of the cranes;
(3) the instructions given to crane operators by the stevedore are limited to when to start
and stop operating the crane and do not include directions on how to move it; (4) only Port
employees are permitted to operate the crane and they must be approved by the Port’s
general superintendent; (5) the Port makes the services of crane operators available by the
hour or by the ton; and (6) the gantry crane is a specialized piece of equipment and only
trained employees of the Port are permitted to operate it. Coco provided summary
judgment proof of each of the foregoing allegations. 
          On appeal, the Port argues that under this Court’s holding in Montemayor v. Chapa,
61 S.W.3d 758, 765 (Tex. App.–Corpus Christi 2001, no pet.), the Tariff alone determines
which party had control of the employee. In Montemayor, we noted that “[w]hen an
individual works for a temporary employment agency and is hired by another company on
a temporary basis, the contract between the agency and the other company controls the
issue of right of control.” Id. After noting that no contract had been executed, we looked
to the surrounding circumstances of the case to determine the issue of control for purposes
of the borrowed servant doctrine. See id. The Port argues that because there is a contract
in this case, Montemayor restricts our determination of control to the terms of the
agreement. See id. We disagree. 
          We will not extend Montemayor to such an extreme. Montemayor is distinguishable
from the instant case because Montemayor did not involve a contract designating control. 
See id. Thus, the language from Montemayor relied on by the Port is dictum and not law. 
To the extent Montemayor suggests that the exclusive determinate of control is always the
language of a contract, we disapprove of its reasoning. It is well-settled law in Texas that
contractual designations of control are not necessarily dispositive. For instance, in Exxon
Corp. v. Perez, 842 S.W.2d 629, 630 (Tex. 1992), the Texas Supreme Court noted that a
“contract between two employers providing that one shall have the right of control over
certain employees is a factor to be considered, but it is not controlling.” Ten years after
Perez, the supreme court reaffirmed this proposition, stating: 
Although a contractual assignment of the right of control can be dispositive
of whether a regular employee of one party is a borrowed employee of
another, it is not dispositive when there is conflicting evidence as to which
entity had the right to control the details of the work in question. In such
circumstances, the issue is left to the jury.
 
St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 544 n.92 (Tex. 2002); see Newspapers, Inc. v.
Love, 380 S.W.2d 582, 590 (Tex. 1964) (“It has been definitely established that a form of
written agreement will not prevent the existence of a master-servant relationship when
such contract is a mere sham or a cloak designed to conceal the true legal relationship
between the parties.”).



          In today’s opinion, we reaffirm the sound principle that a contractual designation of
control will not establish borrowed servant status as a matter of law where evidence shows
that the parties acted to the contrary. See Wolff, 94 S.W.3d at 544 n.92. Thus, even upon
proof of a valid and enforceable contract that designates control, summary judgment is
improper where the non-movant raises fact issues showing that the parties acted in a
manner not contemplated by their contract. As the San Antonio court has explained: 
[I]f the contract says one thing, but the parties continually act in disregard of
the contractual delineation of right of control, we are directed to simply
consider the control provisions as one factor to weigh against any conflicting
evidence of the exercise of that right to determine whether there is sufficient
evidence to present the right of control issue to the fact finder.
 
Alice Leasing Corp. v. Castillo, 53 S.W.3d 433, 441 (Tex. App.—San Antonio 2001, pet.
denied). 
          The factors enumerated in section 227(c) of the Restatement (Second) of Agency
remain a useful aid in weighing the control retained by the general employer against the
control exercised by the special employer. Restatement (Second) of Agency § 227(c)
(1958). These factors include: (1) the machine utilized by the borrowing employer is both
owned by the general employer and operated by the general’s employee; (2) the servant
is expected to operate the machine in the way his general employer would expect while
giving only the results called for by the borrower; (3) the general employer can substitute
another employee at any time; (4) the servant is borrowed for merely a temporary period
of time; (5) the employee has the skill of a specialist. Id.; see Aguilar v. Wenglar Constr.
Co., 871 S.W.2d 829, 831 (Tex. App.—Corpus Christi 1994, no pet.); Lara v. Lile, 828
S.W.2d 536, 538 (Tex. App.—Corpus Christi 1992, writ. denied). In response to the Port’s
motion for summary judgment, Coco provided the trial court with evidence tending to
establish that these factors favor a finding that the Port and not Dix Stevedores had control
of Hinojosa. Summary judgment for the Port was therefore improper because a fact issue
exists as to which entity had control of the employee.
          The Port, however, argues that this Court should not consider the affidavit of John
Coco in determining whether a fact issue exists regarding control. Specifically, the Port
argues that Coco’s statement that “the stevedore did not have direct control over the gantry
crane operations” is a self-serving and conclusory statement supported by no independent
basis of fact. We disagree. Summary judgment may be based on affidavits from
interested parties, but such affidavit evidence must be clear, positive, direct, credible, free
from contradictions, and susceptible of being readily controverted. See Gallegos v.
Escalon, 918 S.W.2d 62, 64 (Tex. App.–Corpus Christi 1996, no writ). John Coco’s
affidavit states: 
At the time I was injured, I was standing on the gantry crane, looking into the
railroad cars. Another longshoreman was operating a front end loader. I had
a radio. At no time did any longshoreman or other employee of the
stevedoring company direct the movement of the gantry crane. . . . The
crane moved under the controls of the Port of Corpus Christi employee.
 
This statement demonstrates Coco’s personal knowledge. It is clear, positive, direct,
credible, and free from contradictions. Furthermore, it could have been readily
controverted by the Port. For instance, the Port could have supplied an affidavit by the
crane operator stating that an employee of Dix Stevedores directed the movement of the
crane. This the Port did not do. Coco’s affidavit is valid summary judgment evidence.
          Summary judgment on Coco’s negligence claim was improper because the Port did
not conclusively establish all elements of its affirmative defense. See Pech, 112 S.W.3d
at 285. 
2. Liability for Premises Defect 
          In his first amended original petition, Coco also claimed that the Port was liable for
damages caused by his fall from the gantry crane because the Port negligently equipped
and maintained the crane. He alleged that his injuries were “caused by a state created
hazard.” In its motion for summary judgment, the Port argued only that it did not owe Coco
a legal duty in the “use and operation” of the gantry crane because the crane operator was
the borrowed servant of Dix Stevedores. As Coco pointed out in his response, this
argument did not address Coco’s claim that his injuries were caused by the defective
condition of the crane. The Port’s motion for summary judgment made no arguments
regarding Coco’s cause of action for premises defect. 
          On appeal, the Port argues that summary judgment was proper because Coco’s
pleadings failed to assert a cause of action based on a premises defect or the defective
condition of property. We cannot, however, uphold a summary judgment based on
arguments that were not presented to the trial court by written motion. See Tex. R. Civ. P.
166a(c); McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993) (“A
motion must stand or fall on the grounds expressly presented in the motion.”). The Port
did not make these arguments in its motion for summary judgment, and it is therefore
barred from raising them for the first time on appeal. See Stiles v. Resolution Trust Corp.,
867 S.W.2d 24, 26 (Tex.1993) ("[A] summary judgment cannot be affirmed on grounds not
expressly set out in the motion . . . .”). We reverse the trial court’s award of summary
judgment on Coco’s claim for premises defect because the trial court granted more relief
than the Port requested in its motion for summary judgment. See Muston v. Nueces
County Sheriff's Dep’t, 122 S.W.3d 469, 471 (Tex. App.–Corpus Christi 2003, no pet.) (“A
summary judgment that purports to dispose of causes of action not addressed in the
summary judgment motion is erroneous.”). 
D. Conclusion 
          We reverse the judgment of the trial court and remand the case for further
proceedings consistent with this opinion.  
 
 
                                                                                      _______________________
DORI CONTRERAS GARZA,
                                                                                      Justice 
Opinion delivered and filed 
this the 15th day of April, 2004.